ELIZABETH WEATHERBEE *vs.* W. H. LITCHFIELD, administrator, & another.

Plymouth.　March 9, 1904. — September 8, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Gift.　Savings Bank.*

A person under obligation to W. declared that he intended to give her a certain savings bank book, having previously declared his intention of leaving her something, and when about to make his will sent for the savings bank book and gave directions to his lawyer, which were not intended to pass the property immediately either as a *donatio causa mortis* or as a gift *inter vivos* to the lawyer in trust for W., but to provide for giving the property to W. by his will. He was to complete his will on the following day, but died the next morning. *Held,* that W. could not maintain a suit in equity against the administrator of the deceased for the possession of the savings bank book or the money represented by it.

MORTON, J.　This is a bill to have a savings bank book, and the money represented thereby, in the hands and possession of the defendant Litchfield as administrator of the estate of one George L. Curtis, late of Scituate in the county of Plymouth, decreed to be the plaintiff's property and Litchfield ordered to deliver the same to the plaintiff, and to execute and deliver to her such transfers as may be necessary.　In the Superior Court the case was sent to a master, and, upon the coming in of his report, the plaintiff filed exceptions thereto which were overruled, and a decree entered confirming the report and dismissing the bill with costs.　The plaintiff appealed; the evidence is not reported.

The master found, amongst other things, that Curtis had been

in the habit for twenty years or more of staying two or three weeks at a time in the home of the plaintiff who was the wife of John Weatherbee. He came and went at will and paid no board. Two weeks before his death he left the Weatherbees and went to live with a family by the name of Totman where he had lived in the same manner as with the Weatherbees. Before he left he told Mrs. Weatherbee that he intended to give her a bank book, and on several occasions said that he should do something handsome for her, and, on the day he left, expressed to her his intention of leaving her something. So far as appears, however, from the facts found by the master, Curtis did not at any time before leaving Mrs. Weatherbee's actually make her a gift or present of a bank book or of any sum of money. After he went to the Totmans he talked more than once about making a disposition of his property, and said that he was going to give Mrs. Weatherbee his Hingham bank book. While he was at the Totmans a nephew filed a petition for the appointment of a conservator, and the citation was duly served on him, and he sent for the defendant Fogg, who is an attorney at law, to consult with in reference thereto. About the same time he also sent for a physician who found him critically ill, and, without telling him of his condition, advised him to make a will. He had some talk with Fogg about the disposition of his property and Fogg also advised him to make a will. Curtis said he would send for his bank books, which were in the possession of one Litchfield, not the defendant, which he did, and the following day sent for Fogg who came up to the Totman house. When he got there, Curtis and Totman were in the dining room. Curtis waited till Totman went out, and then Curtis proceeded to give Fogg directions as to the disposition of the bank books and his other property. When Totman went out of the room he took a seat in an adjoining room where he could see a part of what took place, and, as he testified, could hear all that was said, and there was some conflict of testimony between him and Fogg as to what occurred. Arrangements were made for the completion of the will on the following day, but Curtis was found dead in his room the next morning.

The master's report concludes as follows: " I find that Curtis evidently intended to make a present to Mrs. Weatherbee but I do not find that such intention was carried out in a manner

which can be given effect. I find that his intention was that the gift should take effect through the will which he proposed to make, and that the directions given to Fogg were not intended to pass the property to Mrs. Weatherbee immediately either as a *donatio causa mortis* or as a gift *inter vivos* or to Fogg as trustee for Mrs. Weatherbee but were directions merely for specific legacies to be given in the will which he proposed to make, and a draft of which was actually prepared by Fogg in accordance with such directions. It follows, therefore, that the plaintiff is not entitled to prevail against either defendant."

These findings were warranted by the other facts found by the master and are decisive of the case. There is no doubt that Curtis contemplated making a gift to Mrs. Weatherbee and that he declared his purpose to do so. But there is nothing before us to show that the finding of the master that he intended that the gift should take effect through the will that he proposed to make was erroneous, or to warrant us in overruling his findings that the directions given to Fogg were not intended to pass the property to Mrs. Weatherbee immediately either as a *donatio causa mortis*, or as a gift *inter vivos*, or to Fogg as trustee for Mrs. Weatherbee. Without taking up seriatim the exceptions to the master's report we deem it enough to say that we think they were all rightly overruled and that the decree should be affirmed.

*So ordered.*

*D. G. Haskins, Jr.*, for the plaintiff.

*E. N. Hill*, for the defendants, was not called upon.