COMMONWEALTH *vs.* HENRY E. PELLETIER & another.
SAME *vs.* SAME.

Middlesex.     May 21, 1928. — June 28, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Extortion. Conspiracy. Evidence,* Competency, Relevancy and materiality, Leading question, Opinion, Of threat, Of bias. *Police. Witness,* Redirect examination. *Practice, Criminal,* Exceptions. *Waiver.*

At the trial together of indictments charging police officers with verbally and maliciously threatening to accuse the operator of an automobile of certain infractions of the motor vehicle laws on a certain parkway with intent thereby to extort money from him, and with conspiracy to commit the crime above described, there was evidence that one of the defendants left the route assigned to him to patrol and went into the parkway where, he alleged, he discovered certain violations of the motor vehicle laws by the operator of the automobile; and that afterwards, by words and conduct in combination with the other defendant, he sought to extort money from such operator by threat of prosecution. Evidence of a general order of the chief of police restricting officers to their routes, and of conversations between the first defendant and his superior officers, in which he was instructed not to depart from such order, was admitted. *Held,* that such evidence properly was admitted, being relevant upon the issue of the first defendant's motive or purpose in leaving his route and going into the parkway.

At the trial above described, questions were excluded, answers to which, the defendants alleged, showed a habitual disregard of the general order of the chief of police above described. It appeared from the order that the officer in charge of a station could direct his subordinates to leave a designated route. The questions excluded and an offer of proof made by the defendants did not exclude instances of officers leaving their routes under instructions of the officers in charge of stations, or in the belief that a crime was being committed elsewhere, or for the purpose of apprehending criminals. *Held,* that the questions properly were excluded; the answers to such questions would be immaterial, since they would not show habitual disregard of the general order.

No error was shown in the exclusion, at the trial above described, of a question in redirect examination of a police sergeant called by the defendant, whether or not he would "consider" that an officer would be violating the order if he went into the parkway suspecting that a crime had been committed; the opinion of the sergeant was immaterial.

The police sergeant above mentioned was asked by the defendants in redirect examination, "Did you have reason to believe, just prior to . . . [the date of the offences charged in the indictment] that crime was being committed in . . . [the parkway]?" The question was excluded.

It did not appear from the record what his answer would have been. *Held*, that

(1) The question was leading and it was therefore in the discretion of the judge to exclude it;

(2) The defendants were not shown to have been prejudiced by its exclusion in the absence of anything to show what the answer would have been.

The judge, at the trial above described, admitted testimony of a police captain as to the feelings which actuated him in his treatment of charges against the defendants. One of such questions was admitted before the defendants raised an issue of bias on the captain's part. *Held*, that

(1) The evidence admitted was competent upon the issue of bias;

(2) If it were error to admit the question asked before the issue of bias was raised, such error subsequently was cured by the raising of that issue by the defendants.

The operator of the automobile testified at the trial above described that one of the defendants told him that he was under the influence of liquor and would have to go to court; that he should go see the other defendant, tell him the circumstances and tell him to see the first defendant; that the operator thereupon had several conversations with the second defendant, in which that defendant said, "He [the first defendant] is awful sore . . . so that I think it will cost you about $50 for this . . . [the first defendant] ain't doing something for nothing . . . If you want to go to court, go ahead . . . but if you want to be fixed up . . . [the first defendant] is on duty . . . so that you can go up and see him." *Held*, that

(1) A finding of a verbal threat within the meaning of G. L. c. 265, § 25, was warranted; distinguishing *Robinson* v. *Commonwealth*, 101 Mass. 27;

(2) It was not necessary that such a threat should be in writing.

It was agreed during a conference at the bench between the trial judge, the district attorney and the defendants' counsel at the trial above described that objections by the defendants to the district attorney's argument to the jury need not be presented during the argument but might be presented at its close. Objections by the defendants to portions of the argument were then made, and the judge thereupon charged the jury. At the end of the charge, upon the judge's request to counsel for the defendants to call to his attention anything he had omitted, counsel approved the charge. The defendants thereafter alleged exceptions to the failure of the judge to instruct the jury with reference to the district attorney's argument. *Held*, that the defendants had waived such exceptions.

INDICTMENT, found and returned on October 4, 1927, charging the defendants, two police officers of the city of Cambridge, with verbally and maliciously threatening to accuse one Patsy D'Alessio of a certain crime with intent thereby to extort money from him. Also, an

INDICTMENT, found and returned on October 4, 1927, charging the same defendants with conspiracy to commit the crime charged in the first indictment.

In the Superior Court, the indictments were tried together before *Dillon,* J. At the close of the evidence, each defendant under each indictment filed a motion that the jury be ordered to return a verdict of not guilty. The motions were denied and the defendants were found guilty on each indictment. In the first case, the defendants filed an appeal with an assignment of errors; and in the second case they alleged exceptions. Their assignment of errors and exceptions are described in the opinion.

*G. Alpert & J. H. Vahey,* (*J. P. Feeney* with them,) for the defendants.

*R. T. Bushnell,* District Attorney, for the Commonwealth.

BRALEY, J. These are two indictments which were tried together. The first indictment charged the defendants with maliciously threatening to accuse Patsy D'Alessio of the crime of operating an automobile while under the influence of intoxicating liquor and parking the automobile on the Fresh Pond Reservation without lights, with intent thereby to extort money from him; and the second indictment charged the defendants with conspiracy to commit the crime of extortion set forth in the first indictment. The jury having returned a verdict of guilty on each indictment against each defendant, the cases are here upon a claim of appeal on one indictment under §§ 33A–33E, added to G. L. c. 278, by St. 1925, c. 279, § 1, and amended by St. 1926, c. 329, and in the other case upon a bill of exceptions. We consider the questions raised by the exceptions in the order of their presentation by counsel for the defendants.

The exceptions to the admission in evidence of a general order of the chief of police restricting officers to their routes are without merit. It would be practically impossible to organize and efficiently maintain a police department if control of the department were not conferred upon some one with authority to direct the members of the police force as to their respective rights and duties in different sections of the city. The provisions of G. L. c. 41, § 98, are to be read in the

light of the mandate of G. L. c. 41, § 97, which states that police officers are to obey the orders of the chief of police, and proof of disobedience of the order was relevant upon the question of Pelletier's motive or purpose in leaving the territory which he had been assigned to patrol and going into the reservation. It follows that the conversations between the defendant Pelletier and his superior officers, in which Pelletier was alleged to have been instructed not to depart from the order requiring him to remain on his route, were admissible.

The defendants excepted to the exclusion of questions which, it is contended, tended to establish an habitual disregard of the order to which we have just referred. Whatever may be the effect, if any, of rules and regulations of a private corporation or individual in the conduct of its business as to the duties of its employees, the rules of the department which were for the benefit of the public service were to be obeyed until such time as they were modified or abrogated by the authority which had been clothed with power to establish and promulgate them. The wording of the order indicates that the officer in charge of a station could direct his subordinates to leave an assigned route. It also is to be noticed that learned counsel for the defence did not so word the questions on this point as to exclude instances of officers leaving their routes under instructions of the officers in charge of the various stations, or in the belief that a crime was being committed elsewhere, or for the purpose of apprehending a criminal, and similar instances. It is manifest that such action on the part of an officer would not constitute a violation of the order, and unless these elements were excluded from the questions the answers to them would be immaterial inasmuch as they would not tend to establish habitual disregard of the order. The offers of proof are also open to the same objections. We find it unnecessary to determine whether these questions were admissible for any other purpose. It is suggested in the brief for the defendants that the questions were admissible as showing an habitual disregard of the order. If, however, it be assumed that the question put in redirect examination of Sergeant Stokes, called by the defendant, whether or not, if an officer went

into Fresh Pond Parkway suspecting that a crime had been committed, he would "consider that to be a violation of the rule," was admissible, its exclusion shows no error. The opinion of the sergeant was immaterial.

The chief of police, one McBride, testified in answer to a question on direct examination that he said to the defendant Pelletier: "If you have any reason to believe there is stolen automobiles there, why, you can go in and look for them; otherwise, keep out of there. Or if any other crime is committed in there, why, go in and investigate it." The following testimony in addition thereto was given in cross-examination: "Q. You don't, as chief of police of the city of Cambridge, want to prevent any police officer from detecting crime wherever it exists, do you, in the city of Cambridge? A. Why, no. Q. It is a part of every police officer's duty in the city of Cambridge to see that crime isn't committed if he can prevent it, and if crime has been committed, to see that the offender is brought to justice? A. True. Q. That is the duty of every police officer in the city of Cambridge, isn't it, irrespective of any rules that you make, isn't it? A. Why, I suppose so. Q. You know so, don't you? A. Well, from information received — Q. Wait a minute. Just answer my question. You know so, don't you? A. Yes."

Sergeant Stokes in redirect examination was asked: "Did you have reason to believe, just prior to the fifth of September, 1927, that crime was being committed in Fresh Pond Parkway?" The question was excluded and an exception was saved. The question was leading and therefore its exclusion was in the discretion of the trial court. In any event, as the answer expected does not appear in the record it cannot be said that the defendants were prejudiced. *Commonwealth* v. *Chaney*, 148 Mass. 6, 8.

The admission of the testimony of one Hurley, a police captain, relating to the feelings which actuated him in his treatment of the charges against the defendants does not constitute error. This testimony was material upon the issue of bias. *Jacobs* v. *Whitcomb*, 10 Cush. 255. If it be assumed that the trial judge erred in admitting one of the

questions before the defence brought into the case the issue of Hurley's bias, the fact that this issue was subsequently raised by their counsel cures the error.

The defendants further contend that their motion for a directed verdict should have been granted on the ground that the evidence was insufficient to warrant a finding that a verbal threat within the meaning of G. L. c. 265, § 25, was made. But D'Alessio testified that Pelletier said that "I was under the influence of liquor, and so that I would have to go to court"; that Pelletier also said: "I'll only speak to one man, and that's Coady, and you go down and see Coady, tell him I tripped you up on Fresh Pond Drive, and then for Coady to see me"; and that he, D'Alessio, subsequently had several conversations with Coady during which Coady said, among other things, "He [Pelletier] is awful sore . . . so that I think it will cost you about $50 for this. . . . Pelletier ain't doing something for nothing . . . If you want to go to court, go ahead . . . but if you want to be fixed up . . . officer Pelletier is on duty . . . so that you can go up and see him." The jury on this evidence could find that verbal threats within the meaning of the statute had been made. It is unnecessary that such threats should be in writing. *Attorney General* v. *Pelletier*, 240 Mass. 264, 320, 324. See *Commonwealth* v. *Corcoran*, 252 Mass. 465, 480, 481. The threat may be found in the words of the defendants as contrasted with their acts, signs, looks and conduct. The case of *Robinson* v. *Commonwealth*, 101 Mass. 27, 28, relied on by the defendants, is therefore distinguishable.

The defendants do not contend that the evidence was insufficient to establish a conspiracy, nor do they attempt to controvert the well settled rule that where there is evidence of conspiracy, and the jury so find, the acts and declarations of each conspirator in pursuance of the common design and purpose are admissible against all.

The contention is made that the trial court failed fully and adequately to instruct the jury in reference to several portions of the district attorney's closing argument to the jury. Counsel for the defence made their objections after the district attorney had completed his argument. It had been

agreed during a conference at the bench between the judge, the defendants' counsel and the district attorney that objections need not be made during the district attorney's argument but might be presented at its close.   At the conclusion of the trial and of the judge's charge, a colloquy followed between the judge and counsel for the defendants: "THE JUDGE: I think I will ask you gentlemen to call my attention to anything I have omitted.   It seems to me I have covered most of the points.   MR. VAHEY [counsel for defendant Pelletier]: I'm satisfied. . . . THE JUDGE: Now, have you anything to say about the charge?   MR. FEENEY [counsel for defendant Coady]: No.   MR. VAHEY: It was a very fair charge, and a good one."   Even if, without deciding, it is assumed that the remarks of the district attorney exceeded the limits of reasonable and proper comment, counsel for the defence cannot now contend that the instructions of the judge were not adequate to meet the needs of the situation and to protect the rights of the defendants.   The action taken by counsel for the defendants was a waiver of their exceptions. *Clarke* v. *Massachusetts Title Ins. Co.* 237 Mass. 155, 160, 161. The case at bar for this reason is also distinguishable from *London* v. *Bay State Street Railway*, 231 Mass. 480, 486.

The conspiracy to commit the crime in this Commonwealth is a misdemeanor at common law.   *Fox* v. *Commonwealth, ante,* 51, 53.

In the second case the entry will be, exceptions overruled; and in the first case the entry will be, judgment affirmed. G. L. c. 278, as amended by St. 1925, c. 279, § 1.   See St. 1926, c. 329.

*So ordered.*