KATHRYN G. ROCK & others, executors, *vs.* DELIA M. ROCK & others.

Suffolk.    February 5, 1941. — April 26, 1941.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Gift.    Trust*, What constitutes.  *Joint Tenants.    Executor and Adminis-trator*, Accounts, As creditor of estate.  *Probate Court*, Rehearing, Appeal.  *Laches.*

On evidence that a father made no actual delivery to his son of certificates of shares in a real estate trust which he had indorsed and that he always had received the income therefrom, and correspondence showing he did not intend that any interest should be given to the son before his death, a finding was warranted that there was no gift of the shares to the son during the father's life.

Conduct of a father with respect to certificates of shares of a real estate trust which he had indorsed but had not delivered did not establish either a trust in them for the son's benefit or a joint interest of the father and the son therein.

In the circumstances, an administrator was not justified in using, for the purpose of satisfying a personal claim for payments made by him to the intestate's creditors, personal property which he had not treated as assets of the intestate's estate but unsuccessfully had claimed was given to him by the intestate.

A contest by next of kin of a first account of an administrator, filed by the executors of his will seven years after his appointment, was not as a matter of law barred by laches.

Upon acquiescence by counsel for a party in an intimation by the trial judge that a possible issue was "outside of" the issues being tried, the judge was justified in not deciding such issue.

A motion in this court to discharge an appeal from a decree of a Probate Court to permit that court to pass upon a motion by the appellant to reopen the hearing for the introduction of alleged newly discovered evidence was denied where it appeared that it could not be expected that the Probate Court in the exercise of sound judicial discretion would allow the motion to reopen.

PETITION, filed on May 18, 1940, in the Probate Court for the county of Suffolk by the executors of the will of Charles E. Rock for allowance of his first account as administrator of the will of Frank S. Rock.

The case was heard by *Prest,* J.

*M. Jenckes,* for petitioners.

*J. M. Graham,* (*T. J. Finnegan* with him,) for respondents.

RONAN, J.  This is an appeal, by the executors of the will of Charles E. Rock, from a decree of the Probate Court allowing the first account of Charles E. Rock, as administrator of the estate of his father, Frank S. Rock, from the date of his appointment, March 24, 1932, to December 31, 1939, after amending the account by charging the accountants with two hundred twenty shares of the Rock and Hayes. Real Estate Trust together with the income therefrom received by the administrator, and disallowing payments contained in item 21 made to holders of notes which were alleged to have been indorsed by the intestate.  Charles E. Rock died January 14, 1940, and the account was made by the executors of his will.

Frank S. Rock died February 4, 1932.  The principal asset of his estate consisted of these shares in the real estate trust.  Rock's shares were represented by six certificates which were in a form similar to certificates for corporation shares with written assignment forms on the backs of them. The assignment form on each certificate was signed by Rock on September 29, 1919, and his signature was witnessed by one bank official and guaranteed by another bank official. Upon the back of one of the certificates appears the following legend: "These 220 shares of Rock & Hayes Real Estate Trust belong to Charles E. Rock   Frank S. Rock."

The father wrote several letters to Charles in reference to these shares.  On December 28, 1920, he wrote: "I will sign over all the Rock & Hayes stock to you trusting you to divide it among the others when I am over the river." He suggested that the major portion of the shares was for Charles himself, but the exact number of shares that Charles should have was for Charles to determine.  He stated in a letter dated December 22, 1920, that the payment of the balance due from him to Charles "will be settled by giving him shares" of the trust.  Later in the letter he stated that he had given to Charles all his interest in the shares in payment for money which Charles had advanced to him.  On August 25, 1921, he wrote Charles that he intended to pledge the shares for a new note in substitution of a note of Charles secured by Gillette stock and one of the father's

which was secured by the shares and that if the new note was accepted he would put the Gillette stock in the safety box in the bank. The letter stated that "the R & H stock is already endorsed by me so that if you were to pay the note the stock would be handed over to you without question." His last letter, dated September 26, 1925, stated that the shares had been properly indorsed in blank "so that all that is necessary is to fill in your name when the time comes" and that they were in safety box numbered 80. The letter continued: "This I did in 1919. I want the stock left where it is until I pass out. You have a key to the box and will take possession of the 220 shares, (that being all the shares I own) when I am with the angels. I will enjoy feeling its in our charge to the end."

There was no error in finding that there was no gift of the shares. A gift requires proof of an actual or symbolic delivery of the shares coupled with a present donative intent. *Herrick* v. *Dennett*, 203 Mass. 17. *Robinson* v. *Pero*, 272 Mass. 482. *Harding* v. *Studley*, 290 Mass. 310. *Sullivan* v. *Hudgins*, 303 Mass. 442. There was no manual delivery of the shares. They were always in the custody and possession of the father, except when they were pledged as collateral with the bank, and the father at no time during his life relinquished control of them. He dealt with the shares in all respects as though he was the sole owner. He received all the income. When the letters were written the shares were kept in a deposit box, a key to which Charles had. Later the father hired another box in the name of his son, and while he may have put the shares in this box, there was no evidence that the son knew that the father had acquired this box or that the son had a key to it. Indeed, there is testimony that the father was not willing to give him a key. Subsequently, the father expressed the intention that if he predeceased his wife, then she should have the income of the shares for her support. His letters to his son clearly show that the possession of the shares was not to be given to him until the death of the father, and that the latter, when writing concerning the location of the shares, was simply notifying his son where he could find the stock in the event of the

father's death. The writing on the back of one of the certificates stating that the shares belonged to the son was done to facilitate the transfer of possession to the son. There is nothing to indicate that he had informed the son of this writing on the back of the certificate when he wrote him that the shares had been indorsed, or at any other time. Not only was possession to be delayed until his death, but, upon the testimony, the judge was not plainly wrong in finding that the father did not intend to divest himself of any interest in the shares, and that he did not give the son any present interest in them. The father's plans related to the future disposition of the shares and were of a tentative nature. In one of his early letters he wrote that he would give the shares, and in the same letter that he had given them, to his son. Then he suggests that the son divide them with his brothers and sisters. After his marriage and as time went on, his attention seems to have turned toward the support of his wife. But whatever his plans were for the final disposition of the shares, it is plain that during his life he was loath to part with any interest in them. A finding that there was no intent to make a present gift could not be said to be plainly wrong, *Duryea* v. *Harvey,* 183 Mass. 429; *Weatherbee* v. *Litchfield,* 186 Mass. 399; *Cardoza* v. *Leveroni,* 233 Mass. 310; *McCaffrey* v. *North Adams Savings Bank,* 244 Mass. 396, nor was a finding that there had been no delivery of the shares. *Smith* v. *Thayer,* 234 Mass. 214. *Mitchell* v. *Weaver,* 242 Mass. 331. *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576. *Brine* v. *Parker,* 271 Mass. 86. *Dorchester Savings Bank* v. *Tate,* 308 Mass. 436. Compare *Bone* v. *Holmes,* 195 Mass. 495; *Sullivan* v. *Hudgins,* 303 Mass. 442; *Thaxter* v. *Traiser,* 305 Mass. 341.

The father was not holding the shares as a trustee for his son. He could by an oral or written declaration constitute himself a trustee for the son if he so intended and the son had notice and accepted the beneficial interest. Delivery of the property or of a document declaring the trust is not essential where the settlor makes himself the trustee of personalty. There must be an intent to establish a present trust and create an equitable interest in the beneficiary.

*Supple* v. *Suffolk Savings Bank,* 198 Mass. 393.   *McCaffrey* v. *North Adams Savings Bank,* 244 Mass. 396.   *O'Hara* v. *O'Hara,* 291 Mass. 75.   The retention of the income by the settlor would not be inconsistent with a trust if the reservation of the income was one of the provisions of the trust. *Gerrish* v. *New Bedford Institution for Savings,* 128 Mass. 159.   *Buteau* v. *Lavalle,* 284 Mass. 276.   *Murphy* v. *Smith,* 291 Mass. 93.   *Thaxter* v. *Traiser,* 305 Mass. 341.   And if a valid trust was once created, the father, in the absence of a reservation to revoke or alter, would not have any power to control, manage or dispose of the property except in compliance with the terms of the trust.   *Thorp* v. *Lund,* 227 Mass. 474.   *Geddis* v. *Congdon,* 262 Mass. 294.   *Gorey* v. *Guarente,* 303 Mass. 569.   *Clune* v. *Norton,* 306 Mass. 324.   But that principle is not applicable until the appellants proved the existence of a trust — an issue upon which they had the burden of proof.   *Choate* v. *Arrington,* 116 Mass. 552.   *Chase* v. *Perley,* 148 Mass. 289.   *Knowlton* v. *Fourth-Atlantic National Bank of Boston,* 271 Mass. 343.

There is nothing that would establish a trust in the letters or in the writing on the back of one of the certificates when considered with all the testimony.   There was no completed gift, as we have said, and an imperfect gift does not constitute a trust.   *Cardoza* v. *Leveroni,* 233 Mass. 310.   *Mulloy* v. *Charlestown Five Cents Savings Bank,* 285 Mass. 101. A willingness by the father to take appropriate action in the future to establish a trust is of no more effect in case of a trust than it would be in case of a gift if he intended to take the necessary action to complete a gift.   *Welch* v. *Henshaw,* 170 Mass. 409.   *Cleveland* v. *Hampden Savings Bank,* 182 Mass. 110.   *Robertson* v. *Parker,* 287 Mass. 351. *H. W. Hogarth-Swann* v. *Steele,* 294 Mass. 396.

There was no delivery of the shares to Charles, and the latter could not be considered as a trustee for the benefit of himself and his brothers and sisters.   *Loring* v. *Hildreth,* 170 Mass. 328.   *Johnson* v. *Johnson,* 300 Mass. 24.   Scott on Trusts, § 32.2.

The shares were not included in the inventory of the father's estate.   Charles contended that the shares were

given to him by his father in payment of $100,000 which his father owed him. The son might have advanced money from time to time to his father, but it is not necessary to narrate the evidence for it is enough, for present purposes, to say that the record does not establish that the father, at the time of his death, was indebted to the son. *Boston* v. *Santosuosso*, 308 Mass. 189, and cases cited.

As Charles never took any present interest in the shares during the life time of his father, the contention now urged by the appellants that he had a joint tenancy in the shares is not tenable. A statement in one of the father's letters that he would enjoy feeling that the shares are "in our charge to the end" cannot outweigh the probative effect of the testimony to the contrary, to which reference has already been made.

Charles did not treat the shares as assets of his father's estate. He was not entitled to take the shares in payment of an alleged debt due him from his father or on account of payments made by him to creditors of the estate. The nature of the alleged indebtedness of his father we have already discussed, and the appellants do not show that Charles had any right to apply the shares in satisfaction of his claim. See *Prentice* v. *Dehon*, 10 Allen, 353. *Green* v. *Russell*, 132 Mass. 536. *Buckley* v. *Buckley*, 157 Mass. 536. There would be no necessity for Charles to advance money to pay the creditors of the estate if the shares were included in its assets.

The appellees were not barred by laches from contesting the account and claiming that the shares were the property of the estate. Charles never filed any account during the more than seven years he was administrator. It was his duty to file an account. G. L. (Ter. Ed.) c. 206, § 1. *Fletcher* v. *Fletcher*, 191 Mass. 211. *Fay* v. *Fay*, 299 Mass. 608. Charles first contended that he owned the shares, but he later contended he was holding them as trustee for himself and his brothers and sisters. One of the appellees never received any income from the shares, as did some of her brothers and her sister, and the widow, who had received a few hundred dollars, did not know that it came from the

shares, if in fact it did. No duty rested upon the appellees to compel him to file an account although they could have sought an order to require him to do so. It may be that, as the appellants contend, some things must now go unexplained due to the death of Charles, but the heirs were entitled to an accounting and to receive their shares of the estate. In a case where the administrator neglected for ten years to file an account it was said: "The lapse of time during which he failed to do so [file an account] does not constitute a bar to the rights of the heirs." *Argus* v. *Kokkorou*, 308 Mass. 315, 319. *Patterson* v. *Pendexter*, 259 Mass. 490.

Item 21 of the account consisted of payments made on two notes which were described as having been indorsed by the ·intestate. One of these notes was not so indorsed and the accountants concede that they were not entitled to be credited with its payment. The other note, indorsed by the intestate, became due April 22, 1932. It was not shown to have been a liability of the estate when it was paid in November, 1936, more than four years after the administrator had given bond for the performance of his duties. G. L. (Ter. Ed.) c. 197, § 9. *Rosenblatt* v. *Foley*, 252 Mass. 188. *Nochemson* v. *Aronson*, 279 Mass. 278. Consequently, there was no error in disallowing the entire item as it appeared on the face of the account.

· During the hearing in the Probate Court counsel for the accountants stated that he had learned since the account was filed that the intestate was an indorser upon a note of John C. Rock which was due July 19, 1932, and which was eventually paid out of the account of Charles E. Rock at a Marlborough bank, but that it was not listed in the account. When the judge inquired why he should be concerned with a matter "outside of this account which is now before me," counsel replied "all right" and proceeded to discuss another matter. This note was subsequently referred to in the testimony but the references were no more than a mention of the note. The note was not produced at the hearing and the evidence did not establish when or by whom it was ultimately paid. We think it cannot be said that the ˙judge and opposing counsel were wrong if

they understood that the payment of this note was not in issue and counsel for the accountants cannot fairly complain that the judge did not decide the matter when he acquiesced in the intimation of the judge that it was not an issue. *Barker* v. *Loring,* 177 Mass. 389. *O'Brien* v. *Boston Elevated Railway,* 214 Mass. 277. *Clarke* v. *Massachusetts Title Ins. Co.* 237 Mass. 155. *Commonwealth* v. *Pelletier,* 264 Mass. 221. *Kolasinski* v. *Paczkowski,* 307 Mass. 73. Perhaps we ought to say that, if the matter were open, the evidence upon the record does not warrant a finding that the administrator has sustained the burden of showing that he discharged an existing liability of the estate. *Wood* v. *Farwell,* 195 Mass. 559, 560. *Gallagher* v. *Phinney,* 284 Mass. 255, 258.

The appellants filed in this court a motion to discharge the appeal, for the purpose of permitting the Probate Court to pass upon a motion to reopen the hearing for the introduction of newly discovered evidence. This evidence consists of two checks of Charles payable to his father, dated November 29, 1930, and June 13, 1931, for $3,000 and $1,100, respectively, and a deposit slip showing a deposit of $3,000 made by his father in the Marlborough bank on November 25, 1931, which came from a check drawn on a New York bank. The affidavits accompanying the motion do not show the purpose for which the checks were issued or that the amount of the deposit came from funds furnished by Charles. The two checks and the deposit slip standing alone or considered with the evidence already introduced do not seem of such force and effect that if they were admitted in evidence a different decision would have been reached by that court. It could hardly be expected that the Probate Court, in the exercise of sound judicial discretion, would allow the motion to reopen, which has no standing as a matter of substantive right. *Clark* v. *McNeil,* 246 Mass. 250. *Union Trust Co. of Springfield* v. *Magenis,* 266 Mass. 363. *Union Trust Co. of Springfield* v. *Kittredge,* 298 Mass. 515.

*Motion denied.*
*Decree affirmed.*