William J. FAWCETT, Plaintiff

v.

Ryland E. ROBBINS, et
al, Defendants.

C.A. No. 05–30241–MAP.

United States District Court,
D. Massachusetts.

March 12, 2007.

---

John J. Egan, Kevin D. Withers, Egan, Flanagan & Cohen, PC, Springfield, MA, for Plaintiff.

John E. Garber, Paul S. Weinberg, Weinberg & Garber, P.C., Northampton, MA, for Defendants.

*MEMORANDUM AND ORDER RE-GARDING REPORT AND RECOM-MENDATION WITH REGARD TO RYLAND ROBBINS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket Nos. 15 & 28)*

PONSOR, District Judge.

Plaintiff has brought this action against his stepfather and his stepfather's current wife, seeking a declaration that he is the rightful owner of certain interests in the Northeast Land Development Trust. Defendants have filed a counter-claim, seeking a declaration to the effect that they are the rightful owners of the interests claimed by Plaintiff.

Defendant Ryland E. Robbins filed a Motion for Partial Summary Judgment, seeking partial declaratory relief to the effect that two portions of the shares claimed by Plaintiff were never properly delivered to him and therefore remain the property of Defendant.

The motion was referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation. On October 18, 2006, Judge Neiman issued his Report and Recommendation, to the effect that Defendant's motion be denied. Judge Neiman anchored his Report and Recommendation on his conclusion that, even if actual delivery never occurred, delivery of the interests at issue might have been effectuated via a constructive delivery theory, as set forth in the case of *Edinburg v. Edinburg,* 22 Mass.App.Ct. 199, 492 N.E.2d 1164 (1986). Alternatively, the interests might have been gifted via an *inter vivos* donative document.

Defendant thereafter filed a timely objection to the Report and Recommendation (Dkt. No. 31), and Plaintiff filed a reply (Dkt. No. 32).

Upon *de novo* review, the court hereby ADOPTS Judge Neiman's Report and Recommendation. Although the *Edinburg* decision does address a piece of artwork rather than interests in a trust, there is no indication that the language of the decision was limited. Moreover, it would appear that all the elements of a transfer of shares by *inter vivos* donative document were present. In any event, the court cannot say on the record as developed so far that no reasonable jury could find to the contrary.

Having adopted the Magistrate's Judge's Report and Recommendation, the court hereby DENIES Defendant's Motion for Partial Summary Judgment (Dkt. No. 15). The case is currently unfolding in accordance with a Scheduling Order issued by Judge Neiman on January 4, 2007, with a scheduled pretrial conference for July 26, 2007 at 2:00 p.m.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO RYLAND ROBBINS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Document No. 15)*

NEIMAN, United States Chief Magistrate Judge.

William Fawcett ("Plaintiff") brings this action against his step-father, Ryland Robbins ("Robbins"), and Robbins' new wife, Denise Robbins ("Denise") (together "Defendants"). Among other claims, Plaintiff seeks a declaration determining his and Robbins' ownership interests in Northeast Land Development Trust ("Northeast"), a business trust they jointly owned after Plaintiff's mother died in January of 2004. Robbins, for his part, has filed a similar counterclaim and now seeks partial summary judgment on one aspect thereof, *i.e.*, whether, in early May of 2005, he made "gifts" of certain Northeast shares to Plaintiff.[1]

Robbins' motion for partial summary judgment—more accurately, for partial declaratory relief—has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Robbins' motion be denied.

## I. BACKGROUND

For summary judgment purposes, virtually all of the factual background in this matter is undisputed. Where there is a dispute, particularly with respect to certain events which occurred in early May of 2005, the facts are stated in a light most favorable to Plaintiff, the non-moving party. *See Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003).

### A. *Background Facts*

In 1981, Plaintiff's mother, Mary Lou Robbins ("Mary Lou"), married Robbins. (Document No. 21 ("Fawcett Aff.") ¶ 1.) Plaintiff, then approximately sixteen years old, was Mary Lou's son from a previous marriage. (*Id.* See also Counterclaim ¶ 28.)

Beginning in 1986, Robbins, Mary Lou and Plaintiff served as the sole trustees of Northeast, a business trust established by Robbins and his parents in 1969. (Amended Complaint ¶¶ 4, 8.) Northeast buys, holds, develops and sells land and improved real estate in Western Massachusetts and Northern Connecticut. (*Id.* ¶ 9.) Just prior to Mary Lou's death on January 17, 2004, ownership of Northeast's total of 12,606.4 shares stood as follows: Plaintiff owned 50 shares, Mary Lou owned 3,025 shares, and Robbins owned 9,531.4 shares. (Document No. 17 ("Robbins' Facts") ¶ 8.)

The events between January 17, 2004, and May 6, 2005, lie at the heart of this case. During that period, Plaintiff avers, he acquired his mother's shares of Northeast; other transactions not specifically at issue in these summary judgment proceedings also occurred. (See Amended Complaint ¶¶ 13–16.)[2] Plaintiff asserts that these developments arose out of discussions he had with his mother and Robbins prior to her death, *i.e.*, that they intended "to transfer ownership of all of Northeast and other assets" to him. (Fawcett Aff. ¶ 17.) Robbins, for purposes of his motion at least, does not challenge these transactions. Nor does Robbins dispute Plaintiff's assertion that the two of them maintained a close relationship during Mary

---

**1.** The parties have also filed various tort claims which are not part of this summary judgment proceeding.

**2.** For example, Plaintiff notes that Robbins disclaimed any interest in 3,025 Northeast shares Mary Lou left to Plaintiff in her will, made gifts to Plaintiff and his family of various of his mother's personal articles, and continued to participate in Plaintiff's own family events. (*Id.* ¶¶ 13, 18, 20.)

Lou's illness and after her death. (See, e.g., id. ¶ 12; Amended Complaint ¶ 6.) Instead, Robbins focuses on two blocks of Northeast shares which Plaintiff claims Robbins "gifted" him in early May of 2005: 3,226 shares on May 6, 2005, and 1,286 shares on May 8, 2005. (Amended Complaint ¶¶ 17, 19.)

What exactly happened in early May of 2005, as might be expected, is the subject of some dispute. However, it is undisputed that two series of letters (three in each series) were executed, all of which are attached to the complaint. The initial series of letters are dated May 6, 2005. The first one is signed by Robbins and addressed to "Trustee"; it states that, "[i]n accordance with [the] Declaration of Trust," Robbins was "offer[ing] to the Trust the option to purchase 3226 Shares in the Trust owned by me" at a price "to be determined by the Trust and Myself." (Id., Ex. D.) The second letter, to Robbins, is signed by Plaintiff as "Trustee" and "Acting Secretary"; it states that the trustees voted to "decline the [purchase] offer." (Id.) The third letter, to Plaintiff, is from Robbins; it states that Robbins was "gifting [Plaintiff] 3226 shares of Northeast" at a "tax basis" of "$157.39, per share." (Id.) The three letters in the second set are all dated May 8, 2005. They are identical to the May 6th letters, except that they concern an additional 1,286 shares. (Id., Ex. E.)

According to Plaintiff, the May 6th and 8th letters came to be executed as follows. In early 2005, Robbins, by then age eighty-two, informed Plaintiff that he intended to remarry. (Fawcett Aff. ¶ 21. See also Counterclaim ¶ 28.) Then, in late April or May, Robbins asked Plaintiff to come to Florida, where Robbins was living, because Robbins wanted to complete the transfer of Northeast shares to Plaintiff prior to the wedding. (Fawcett Aff. ¶ 22.)

In Plaintiff's words, the following occurred:

27. The completion of the documents took place at the office of the accountant that Mr. Robbins used in Florida. I may have made the phone call to schedule the initial meeting, but, if I did so, I did it at Mr. Robbins['] direction and he was fully aware of the purpose of the meeting before it occurred. At the initial meeting, the trustees and the accountant discussed what the trustees wanted to do and the details for accomplishing those transfers in a beneficial way from a tax standpoint. The accountant agreed to prepare the documents in the agreed form and the trustees returned the following day to review and execute them.

28. The meeting at the accountant's office of myself and Mr. Robbins as trustees to execute the documents was conducted in the same informal manner as other trustees meetings. There was no formal call to order or formal casting of votes, but, the documents were reviewed, we agreed this was what we agreed to do as trustees, and the documents were signed to effectuate this plan.

29. After the documents were signed, they were given to me so that I could bring them back to Massachusetts and put them in the minute book of Northeast. Mr. Robbins also gave me a blank share certificate for the shares being transferred to me.

(Fawcett Aff. ¶¶ 27–29.)

Continuing, the complaint states that on May 9, 2005, following the two "gifts" which are the subject of the summary judgment motion, "Robbins sold and Northeast purchased all of his remaining 5,019 shares in Northeast to the Trust for $1,026,000, which was paid to ... Robbins on May 11, 2005." (Amended Complaint

¶ 21.) Plaintiff, in his affidavit, then states as follows:

> 33. After the meeting at the accountant's office to execute the documents and we returned to Mr. Robbins' condominium in Florida, we had a further discussion about how the money to be paid by Northeast to Mr. Robbins for the block of 5,019 shares would be marshaled and paid. The instructions concerning those details were given by Mr. Robbins to the broker who acted on behalf of Northeast. Subsequently, Mr. Robbins confirmed to me that the instructions had been given as planned and the money had been received by him. This was all completed prior to Mr. Robbins['] wedding to Defendant Denise Robbins.
>
> 34. On my return to Massachusetts prior to Mr. Robbins['] wedding, I recorded the transactions concerning the transfer of shares to me and the sale of Mr. Robbins['] remaining shares to Northeast in Northeast's minute book.

(Fawcett Aff. ¶¶ 33, 34.)[3]

After Robbins married Denise on May 28, 2005, his relationship with Plaintiff quickly soured. On June 23, 2005, Robbins deposited $1,026,000 into the Northeast account and claimed he wanted his 5,019 shares back. (Amended Complaint ¶ 24.) Then, on September 21, 2005, Robbins wrote to Plaintiff, "saying he revoked and withdrew any gift or 'intention to give' him any shares in Northeast." (*Id.* ¶ 25.)

**B.  *Procedural History***

On November 8, 2005, Defendants removed this action from the Hampden County Superior Court where it was originally filed. Thereafter, on November 23, 2005, Robbins filed an answer and counterclaims, while Denise simply answered the complaint.

■ Plaintiff amended his complaint, without opposition, on May 10, 2006. Neither Robbins nor Denise has answered the amended complaint. Rather, Robbins, on April 26, 2006, filed the motion for partial summary judgment currently at issue.[4] Before turning to Robbins' motion, the court first lists Plaintiff's claims and Robbins' counterclaims.

Plaintiff's amended complaint contains five causes of action. Count I is entitled "Declaratory Relief"; it seeks "a determination of Plaintiff's ownership interests in Northeast and the respective rights and obligations of Plaintiff ... and ... Robbins individually and as Trustees of Northeast." Count II alleges that Robbins breached his fiduciary duty. Counts III and IV assert, respectively, that Robbins is liable for conversion and misrepresentation. And Count V claims that Denise is liable for interference with Plaintiff's contractual and/or advantageous relationship.

Robbins' counterclaim contains eight causes of action. Similar to Plaintiff's Count I, Robbins' Count VIII seeks a declaratory judgment in his favor, namely, a declaration that he is "the owner of all

---

3. For his part, Robbins asserts that it was Plaintiff who suggested that he fly to Florida to meet Denise, that Robbins did not prepare the documents or propose the meeting at which they were generated, and that no meeting of the trustees was actually called to order or held. (Robbins' Facts ¶¶ 10, 12.) As indicated, however, the court has presumed Plaintiff's version to be true for purposes of Robbins' motion.

4. Despite the lack of answers to the amended complaint, there is no reason for the court to delay issuance of this report and recommendation. First, the court notified Defendants of this apparent oversight at oral argument and they agreed to file amended answers forthwith. Second, the amended complaint does not vary from the original with respect to the pending issue. Third, Robbins had a copy of the amended complaint prior to filing his motion for summary judgment.

outstanding shares of Northeast, except for the 50 shares that have been owned by [Plaintiff] since 1988." Counts I through VII allege that Plaintiff is liable for breach of fiduciary duty (Counts I and III), conversion of jewelry (Count II), misrepresentation (Count IV), breach of contract (Count V), "money had and received" (Count VI), and unjust enrichment (Count VII).

Although Robbins does not tie his motion to any particular claim or counterclaim, he confirmed at oral argument that he is seeking summary judgment with respect to a portion of Count I of Plaintiff's complaint and Count VIII of his own counterclaim, *i.e.*, the competing declaratory judgment causes of action. More specifically, Robbins requests in his motion that the court "enter judgment declaring that 4,512 shares of Northeast . . ., which were the subject of his May 6, 2005 and May 8, 2005 letters, are owned by . . . Robbins; that [Plaintiff]'s claims of ownership to these shares be dismissed with prejudice; and for such other and further relief as this court deems proper." (Robbins' Motion at 2.)

## II. STANDARD OF REVIEW

It is permissible for a counterclaimant to seek summary judgment as to "any part" of the case. *See* Fed.R.Civ.P. 56(a), (b). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). For this purpose, an issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows

the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## III. DISCUSSION

The parties' positions with respect to the gifts issue are fairly straightforward. Robbins argues that there were no gifts as a matter of law. Plaintiff, by contrast, asserts that there are genuine issues of material fact and that Robbins is not entitled to the requested declaratory relief. In the court's view, Plaintiff has the stronger argument, at least for summary judgment purposes.

█ The parties agree that, "[a]s a general rule, to sustain a transfer as a gift, there must be evidence of donative intent on the donor's part, combined with evidence of delivery of the property to the donee, or someone acting on the donee's behalf, in a manner that surrenders dominion and control." *Edinburg v. Edinburg*, 22 Mass.App.Ct. 199, 492 N.E.2d 1164, 1167 (1986) (citing *Silverman v. A. & L. Heel Corp.*, 353 Mass. 108, 228 N.E.2d 720, 722 (1967); *Kobrosky v. Crystal*, 332 Mass. 452, 125 N.E.2d 385, 390–91 (1955)). For summary judgment purposes, Robbins does not dispute "donative intent." He does, however, argue that the disputed 4,512 shares of Northeast (the 3,226 shares described in the May 6th letters and the 1,286 shares described in the May 8th letters) were not actually delivered to Plaintiff and that a constructive delivery theory is not available in corporate share cases such as this. Plaintiff, on the other hand, distinguishes the "actual delivery" cases Robbins cites and argues: (1) that constructive delivery is, indeed, an applicable theory, (2) that a fact finder could reasonably conclude that Robbins constructively delivered the shares to him, and (3) that a reasonable fact finder could also determine that Robbins delivered the

shares to him by an *"inter vivos* donative document."

Robbins first argues that there was no actual delivery. According to Robbins, his shares "had to be cancelled, and replaced with new certificates issued to [Plaintiff]" in order for him to transfer shares of ownership in Northeast in accordance with the declaration of trust. (Document No. 16 ("Robbins' Brief") at 7.) "In addition," Robbins argues, "the transfer had to be recorded on the Northeast share register." (*Id.*) "With respect to the shares claimed by [Plaintiff]," Robbins asserts, "none of this ever happened." (*Id.*) Accordingly, Robbins concludes, there was no actual delivery as a matter of law and, therefore, no gifts.

In support, Robbins relies principally on two Supreme Judicial Court ("SJC") decisions, *Rock v. Rock,* 309 Mass. 44, 33 N.E.2d 973 (1941), and *Silverman, supra.* In Rock, a father signed assignment forms on the back of share certificates and placed his and his son's names thereon. *Id.,* 33 N.E.2d at 975. He then wrote several letters to his son about his intention that the shares would be the son's upon his death. *Id.* He also notified his son that he had pledged control of the shares to a bank for a loan but, if the son paid the loan note, that the shares would be turned over to him. *Id.* Thereafter, the father wrote to his son that the shares had been endorsed to him and that they were in a safety deposit box with a specific number. *Id.* After the father died, the SJC found that there was no gift of the shares. *Id.* In reaching this conclusion, the SJC noted, among other things, that: (1) there was no manual delivery of the shares; (2) the shares were always in the

custody and possession of the father, except when they were pledged as collateral to the bank; (3) the father at no time relinquished control of the shares; and (4) the father had dealt with the shares at all times as the sole owner. *Id.* at 975–77.

In *Silverman,* the second case upon which Robbins primarily relies, two stock certificates, one which allegedly gave the donee forty-nine shares in a company, arrived in the company mail at a time when the alleged donor was away. *Id.,* 228 N.E.2d at 722. The alleged donee asked the donor what to do with them, and the donor said to put them in the donor's safe for safekeeping. *Id.* at 723. The two both signed the share certificates as officers of the corporation, and the alleged donee never saw them again. *Id.* The SJC held that the "circumstances of the delivery of the certificates to [the alleged donor]'s office and their subsequent placement in his safe display[ed] an absence of the completely executed delivery and transfer essential to a valid gift." *Id.* (citations omitted).

Plaintiff, in the court's view, adequately distinguishes both *Rock* and *Silverman* on procedural grounds, *i.e.,* both cases were received by the SJC only after factual findings had been made at the trail court. *Rock* involved an appeal *after* a finding of fact had been made in the lower court; the only question for the SJC was whether that factual finding was erroneous. Similarly, in *Silverman,* the SJC had to address whether the trial court's factual conclusion that a gift was not perfected was erroneous. Here, unlike *Rock* and *Silverman,* the facts have not yet crystallized to a point where the court would be confident in finding that there was no actual delivery as a matter of law.[5]

---

5. In *Silverman,* it should be noted, the SJC upheld the trial court's determination that no gift had been made. *Id.* at 723. In doing so, however, the SJC agreed that the placing of the stock certificates in the alleged donor's safe was "not inconsistent with the finding of a perfected gift." *Id.* That is an important acknowledgment given the summary judgment posture of the present case.

To be sure, Robbins makes a strong argument that the share certificates themselves were never actually delivered to Plaintiff. (See, *e.g.*, Robbins' Facts ¶ 15 (asserting that, since 1988, "Robbins has never issued or re-issued ... [or] given any Northeast share certificates to [Plaintiff] or anyone acting for [Plaintiff]").) Thus, if Robbins is correct that *actual* delivery is *always* required in a corporate share case such as this, his success might be assured. Unfortunately for Robbins, the court is not convinced that actual delivery is required.

█ In this vein, Robbins asserts initially that the *constructive* delivery theory Plaintiff raises is not available where the alleged gift property is ownership in a company which issues certificates for share ownership. (See Robbins' Brief at 8 (citing 38 Am.Jur.2d *Gifts* § 26–28 at 724–28).) Moreover, Robbins argues, "[e]ven if the concept of constructive delivery had any application here, there was never delivery of any document or thing that could be construed as constructive delivery by Robbins to [Plaintiff] of the shares identified in the May 6 and May 8 letters." (*Id.*) As for the letters themselves, Robbins asserts, "[t]hey are not legal instruments at all, and have no legal affect [sic] to pass title." (*Id.*)

The court finds Robbins' initial argument—that a constructive delivery theory is unavailable in corporate share cases—wanting. For one thing, Robbins cites nothing more than the single article noted above. He also ignores language from *Edinburg*, a case he cites for other purposes, which directly endorses a constructive delivery theory. *Id.*, 492 N.E.2d at 1168 ("[W]here ... actual delivery is impractical, some symbolic or constructive form of delivery may be present and sufficient to warrant a conclusion that a gift has been made.") (citation omitted). Granted, as Robbins points out, *Edinburg* was not a corporate share case—it dealt with the alleged transfer of artwork—but there is no indication that it should be limited to those facts.[6]

Writing for a unanimous panel of the Appeals Court of Massachusetts in *Edinburg*, Chief Judge (now SJC Justice) John M. Greaney wrote that while actual delivery "is certainly one form of corroborating evidence" in a gift case, "it is inappropriate in some situations, and should not be the only acceptable evidence sufficient to corroborate the donee's claim." *Id.* at 1168 (citation and internal quotation marks omitted). "To insist on delivery as a necessary element of a gift," Judge Greaney explained, "may be unreasonable; to state the requirement in terms of the amount of proof necessary to establish the donee's claim, recognizing that delivery is sufficient corroboration in the normal case, is clearly the better approach". *Id.* at 1168 (citation and internal quotation marks omitted). "This analysis," Judge Greaney continued, "by no means expresses a novel proposition but has been stated by authorities on the law of personal property and has been previously applied by other courts." *Id.* (noting cases collected in Jones, *Corroborating Evidence as a Substitute for Delivery in Gifts of Chattels*, 12 Suffolk U.L.Rev. 16, 21 (1978)). "In essence," Judge Greaney concluded, "the analysis relies upon the principle that evidence of the donor's words and conduct

---

6. For example, in a case cited by neither party, Massachusetts Superior Court Judge Francis R. Fecteau discussed *Edinburg's* constructive delivery theory in the context of an alleged gift of corporate profit by the company's majority shareholder to a vice president. *Clancey v. G.F. Wright Steel & Wire Co.*, 1998 WL 1182096, at **1, 3 (Mass.Super.Ct. Apr. 1, 1998). Although Judge Fecteau found that constructive delivery did *not* occur given the facts before him, he applied the doctrine all the same. *See id.* at *3.

that is sufficiently strong to corroborate the donee's position that a gift has been made will safeguard against fraudulent claims and warrant a conclusion by a fact finder that the gift is valid, notwithstanding equivocal or weak proof of delivery." *Id.*

■ In this court's opinion, the *Edinburg* constructive delivery theory has obvious import here. The alleged donor (Robbins) delivered original documents—*i.e.,* the May 6th and 8th letters, as well as blank share certificates—apparently effectuating the transfer to the alleged donee (Plaintiff); the documents describing the gifts stated that they were being made then and there; and the documents effectuating the transfer were recorded in Northeast's minute book. These facts, looked at in a light most favorable to Plaintiff, may well support constructive delivery of the shares.

It is also worth noting that, in the months immediately following Mary Lou's death, Robbins engaged in a pattern of transferring ownership of Northeast and other assets to Plaintiff, as Plaintiff asserts was intended by both his mother and Robbins. In short, Robbins' "words and conduct" appear "sufficiently strong," at least for summary judgment purposes, to corroborate Plaintiff's position that gifts were made and to warrant a conclusion by a fact finder that the gifts were valid notwithstanding what might turn out to be "equivocal or weak proof of delivery."

The clinching argument for present purposes, however, was presented by Plaintiff at oral argument when he invoked the "Gifts" chapter from the *Restatement (Third) of Property: Wills & Other Donative Transfers.*[7] Section 6.2 of that chapter states that "[t]he transfer of personal property, necessary to perfect a gift, may be made (1) by delivering the property to the donee or (2) *by inter vivos donative document.*" *Restatement (Third) of Property: Wills & Other Donative Transfers* § 6.2 (2003) (emphasis added). The comments to the chapter confirm that "physical delivery of the item of personal property to the donee is not necessary." *Id.* at 28, cmt. p. Rather, the comments explain, the gift will be perfected if there is an "*inter vivos* donative document," *i.e.,* "a writing that is signed by the donor that (1) identifies the donor and donee; (2) describes the subject matter of the gift; and (3) specifies the nature of the interest given." *Id.* at 28, cmt. q.

■ It would appear that, for summary judgment purposes at least, all the elements of a transfer of shares by *inter vivos* donative document are present. First, there are writings signed by the donor (Robbins) which identify both the donor and the donee (Plaintiff), to wit, the May 6th and 8th "gift" letters attached to the complaint. Second, those letters describe the subject matter of the gift; the May 6th letter specifically identifies "3226 shares of Northeast Land Development Trust" and the May 8th letter specifically identifies "1286 shares of Northeast Land Development Trust." Third, both letters specify the nature of the interest given, *i.e.,* they each indicate that Robbins is "gifting" the shares "on this date" and that the shares' "tax basis" is "$157.39, per share." Finally, despite Robbins' argument that *actual* delivery is required, it is clear that the Restatement considers corporate shares to be "personal property"

---

7. Various portions of the Third Restatement dealing with donative transfers have been relied upon by both the Court of Appeals for the First Circuit and the SJC. *See, e.g., Venegas–Hernandez v. Asociacion De Compositores, Editores De Musica Latinoamericana (ACEMLA),* 424 F.3d 50, 55 (1st Cir.2005); *Watson v. Baker,* 444 Mass. 487, 829 N.E.2d 648, 653 n. 9 (2005); *Kelley v. Neilson,* 433 Mass. 706, 745 N.E.2d 952, 956–57 (2001).

which might by gifted by an *inter vivos* donative document. *See id.* at 29, cmt. t ("An *inter vivos* donative document may transfer any type of personal property, whether tangible or intangible, including . . . shares of stock."). *See also id.* at 29–30, illus. 18 (describing father's written transfer of stock shares to children as illustrative of a transfer by *inter vivos* donative document).

In sum, the *actual* delivery cases Robbins relies upon are distinguishable on procedural grounds. In addition, there can be no question that Plaintiff has raised a genuine issue of material fact in terms of both the constructive delivery of a gift described by the court in *Edinburg* and the theory of delivery by *inter vivos* donative document as set forth in the Third Restatement. Accordingly, the court concludes that Robbins is presently not entitled to the declaratory relief he seeks and will so recommend.

## IV. CONCLUSION

■ For the reasons stated, the court hereby recommends that Robbins' motion for summary judgment be DENIED.[8]

Oct. 18, 2006.

---

8. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the

---

Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.