# NEWTON POLICE ASSOCIATION *vs.* POLICE CHIEF OF NEWTON.

No. 03-P-1159.

Middlesex. June 8, 2004. - June 9, 2005.

Present: ARMSTRONG, C.J., GELINAS, & BERRY, JJ.

*Police,* Authority of police chief. *Municipal Corporations,* Police. *Motor Vehicle,* Citation for violation of motor vehicle law. *Words,* "May."

A Superior Court judge properly entered judgment declaring invalid a police chief's order directing officers assigned to traffic enforcement duties in certain areas to issue traffic violation citations to traffic offenders, and to cease issuing written warnings, where the language and history of G. L. c. 90C, § 2, evinced a legislative purpose of divesting police headquarters of control over a decision that, under the statute, must be made by the officer at the scene. [697-701]

CIVIL ACTION commenced in the Superior Court Department on April 2, 2003.

The case was heard by *Leila R. Kern,* J.

*Donnalynn B. Lynch Kahn,* Assistant City Solicitor, for the defendant.

*James F. Lamond* for the plaintiff.

ARMSTRONG, C.J. The Newton Police Association (association), representing the police officers of the Newton police department, brought this action for declaratory relief in Superior Court, asking that the court declare invalid an order issued by the police chief of Newton directing officers assigned to traffic enforcement duty at designated high accident locations to issue traffic violation citations to traffic offenders, and to cease issuing written warnings. The association's position is that the order runs afoul of G. L. c. 90C, § 3(A)(1), which, as appearing in St. 1991, c. 138, § 161, reads:

> "If a police officer observes . . . a civil motor vehicle infraction, the officer may issue a written warning or may

cite the violator for a civil motor vehicle infraction . . . . If the officer issues a citation solely for one or more civil motor vehicle infractions without any associated criminal violations, the officer shall indicate on the citation the scheduled assessment for each civil motor vehicle infraction alleged."[1]

The police chief argues, to the contrary, that the word "may" in G. L. c. 90C, § 3(A)(1), is intended merely to provide authority to police officers to issue either citations or written warnings, and that in the exercise of these grants of authority, the officers are subject to the direction of the police chief. The police chief is vested with inherent authority to direct the operations of the police department, as "[i]t would be practically impossible to organize and efficiently maintain a police department if control of the department were not conferred upon some one with authority to direct the members of the police force as to their respective rights and duties in different sections of the city." *Commonwealth* v. *Pelletier*, 264 Mass. 221, 223 (1928). The police chief cites numerous statutes that confer authority on police officers, by use of the word "may," without suggesting that the officers can exercise their discretionary powers free from direction and control by superior officers.[2]

The police chief's argument accurately reflects what is probably a general principle, that statutes so worded presumptively use the word "may" in the sense of "is permitted," or "is allowed," or "is authorized or empowered," to contrast the designated action with one that officers are *not* permitted to take.

---

[1] A "civil motor vehicle infraction," as defined in G. L. c. 90C, § 1, is, subject to certain exceptions, an automobile law violation, the maximum penalty for which does not include imprisonment. The "scheduled assessment" is the amount predetermined for listed violations as jointly promulgated by the Chief Justice of the District Court Department and the Registrar of Motor Vehicles. *Ibid.*

[2] See, e.g., G. L. c. 41, § 98 (officers "*may* examine all persons abroad whom they have reason to suspect of unlawful design, and *may* demand of them their business . . . . *may* disperse any assembly . . . . *may* enter any building to suppress a riot, etc. . . . *may* search . . . for a dangerous weapon" [emphasis added]); G. L. c. 140, § 52 ("*may* enter and inspect [certain] premises . . ." [emphasis added]); G. L. c. 140, § 201 ("*may* at any time enter [certain premises]" [emphasis added]).

The history of G. L. c. 90C, however, convinces us that the word "may," as used in § 2 and § 3 of that chapter, was meant to confer independence on officers assigned to traffic enforcement duty. Chapter 90C was inserted in the General Laws by St. 1962, c. 789, § 2. Section 2 of c. 90C continued the earlier practice (under G. L. c. 90, § 27, as appearing in St. 1961, c. 592) that the police officer who witnessed a traffic offense would record the violation on a citation form and submit it to police headquarters. Within three days from receipt of the citation, the police chief or a designated officer of at least sergeant grade would decide whether to proceed by way of a written warning, a court complaint,[3] reference to the Registry of Motor Vehicles, or voiding the citation. In 1965, concerned by the "opportunity for subsequent maneuvering or pressure" afforded by the three-day period, then-Governor John A. Volpe, by special message to the Legislature, proposed a "no-fix" traffic ticket bill. 1965 Senate Doc. No. 839. The object of the bill was to require, as a general rule, that the decision to issue a citation (in effect an application for a District Court complaint) be made by the police officer at the time and place of the violation. The crux of the Governor's draft legislation lay in this sentence: "A failure to give the original of the citation to the offender at the time and place of the violation shall constitute a bar to prosecution for such offense, except where the violator could not have been stopped, or where some other circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure." 1965 Senate Doc. No. 839, Appendix A. That sentence, as slightly amended in committee,[4] remains the crux

---

[3]It was not until St. 1982, c. 586, § 2, that G. L. c. 90C was rewritten to decriminalize lesser automobile law violations and provide for the offender simply to remit a designated fine.

[4]See 1965 Senate Doc. No. 1121 and 1965 House Doc. No. 4200, which was enacted as St. 1965, c. 692. The sentence, as appearing in St. 1965, c. 692, § 3, read: "A failure to give the original of the citation to the offender at the time and place of the violation shall constitute a defence in any trial for such offense, except where the violator could not have been stopped, or where the court finds that some other circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure."

of G. L. c. 90C, § 2, in its present form.[5]

General Laws c. 90C, § 3, upon which the association relies, sets out the detailed procedures for the noncriminal disposition of lesser automobile law violations ("civil motor vehicle infractions").[6] Read in isolation from § 2, the words of § 3(A)(1) ("the officer may issue a written warning or may cite the violator for a civil motor vehicle infraction") could reasonably be read as merely providing authority for the officer to do one or the other. The words of § 3, however, echo and must be read together with § 2. The history of § 2 makes it clear that the Legislature's purpose was to divest police headquarters of control over a decision that, under the statute, must be made by the officer at the scene.

It could be argued for the city (although in fact it is not) that permitting the police chief to restrict the officer's discretion would not compromise the purpose of G. L. c. 90, § 2 — the "prevention of corrupt manipulation," *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 281, 283 (1983) — because the treatment accorded offenders would be uniform. The argument is not insubstantial — it respects the spirit if not the letter of § 2 — but we decline to trench in that manner on the statute's literal meaning. The Legislature in 1965, at Governor Volpe's urging, very deliberately transferred this discretionary decision from the police chief to the officer on traffic control duty. General Laws c. 90C, § 2, was the vehicle they chose for dealing with the evil

---

[5]The sentence now reads: "A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure." G. L. c. 90C, § 2, as appearing in St. 1985, c. 794, § 3. The sentence took its present form in St. 1982, c. 586, § 2, which introduced the distinction between lesser infractions, which could be disposed of by mailing in the designated fine (now termed "scheduled assessment"), and which would result in no criminal record, and more serious automobile law violations, which would be processed by criminal complaint.

[6]As recounted in note 3, *supra*, the provision for noncriminal disposition began with St. 1982, c. 586, § 2, and was refined by St. 1985, c. 794, § 3, and again by St. 1991, c. 138, § 161. General Laws c. 90C, § 3, was rewritten by each act.

they perceived, and the judge did not err in declining to amend the Legislature's work.

Accordingly, the judge correctly entered a judgment declaring the police chief's order invalid.

*Judgment affirmed.*