NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12445


COMMONWEALTH  vs.  RICHARD O'LEARY.



Norfolk.     March 5, 2018. - July 12, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Cypher, & Budd, JJ.


Motor Vehicle, Citation for violation of motor vehicle law.
    Practice, Criminal, Citation for violation of motor vehicle
    laws, Dismissal.  Notice.



Indictments found and returned in the Superior Court
Department on September 23, 2014.

A motion to dismiss was heard by Beverly J. Cannone, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Douglas T. Babcock for the defendant.
Pamela Alford, Assistant District Attorney, for the
Commonwealth.


CYPHER, J.  The defendant, Richard O'Leary, asks this court

to determine whether the Commonwealth met its burden of proving

compliance with the citation requirement of G. L. c. 90C, § 2,

which mandates the issuance of a traffic citation "at the time

and place of the violation," despite the fact that a State police trooper did not issue a traffic citation at the scene of the violation or at the hospital following the interviews he conducted. Instead, before issuing the citation, the trooper submitted an accident report to his supervisor for approval, which the trooper received nine days later. Because we consider this unexplained, nine-day delay in the citation's issuance to be inconsistent with one of the two legislative purposes of the "no-fix" provision -- specifically, the antiabuse purpose -- we affirm the dismissal of the indictments.

Facts and procedural history. We adopt the Superior Court judge's factual findings, which we do not disturb absent clear error, and supplement them with uncontroverted details from the record. Commonwealth v. Burnham, 90 Mass. App. Ct. 483, 484 n.1 (2016), citing Commonwealth v. Eckert, 431 Mass. 591, 592 (2000). Around 10:30 P.M. on April 19, 2014, State police Trooper Jared Gray responded to an accident on a highway off-ramp. Gray arrived to find that a single vehicle had rolled over and dislodged a highway sign; the police had closed the off-ramp, and emergency medical services were at the scene. Two individuals, the defendant and a passenger, Patricia Murphy, had been injured in the accident. Both the defendant and Murphy claimed to be passengers in the vehicle, and both were transported to a hospital.

Gray followed the ambulances to the hospital to interview the defendant and Murphy. He left his citation book in his vehicle. He first spoke with Murphy, who reiterated that she had been a passenger in the vehicle. During this interview, it appeared to Gray that Murphy was intoxicated. Gray then spoke with the defendant. Gray gave the defendant Miranda warnings, and the defendant admitted that he had been the driver of the vehicle and that he had had "a couple of beers." The defendant's "eyes were glassy" and "his speech was slurred." At the time of the accident, the defendant was on probation for operating a motor vehicle while under the influence of alcohol (OUI), subsequent offense. His license had been suspended, and he was not legally permitted to drive. Gray informed the defendant that he would be receiving a summons in the mail for OUI, a marked lanes violation, and operating with a suspended or revoked license.

Gray did not issue a citation at that time. Gray later submitted his investigation report to his supervisor, who approved the report nine days later, on April 28, 2014.[1] On that day, Gray issued citations to the defendant for a marked lanes violation, operation of a motor vehicle with license suspended

---

[1] State police trooper Jared Gray testified at the motion to dismiss hearing that, upon leaving the hospital, his shift was over so he went home. The record does not establish exactly when Gray submitted the report to his supervisor.

for OUI, operation of a motor vehicle with license revoked, and OUI, fifth offense. Gray then placed the citations in the barracks mailbox.[2] Due to a ZIP code error in the State police reports system, however, the defendant did not receive the citation until approximately five to six weeks after the incident.

A Superior Court judge granted the defendant's motion to dismiss on the grounds that Gray had failed to issue a citation "at the time and place of the violation," as required under § 2, and because the Commonwealth did not meet its burden of demonstrating that an exception in § 2 applied. The Appeals Court reversed, holding that the case fit within the third statutory exception, which excuses delayed delivery of citation "where the court finds that a circumstance, not inconsistent with the purpose of [§ 2] . . . , justifies the failure." Commonwealth v. O'Leary, 92 Mass. App. Ct. 282, 284, 286-287 (2017), quoting G. L. c. 90C, § 2. While noting that there did not appear to be "any strong reason for the delay" in issuing the citation, id. at 286, the court considered dismissal unnecessary where "there was no manipulation or misuse of the

_____

[2] Gray testified that, when sending mail, officers from his department "put mail in our barracks mail box. That barracks mail box is transported to headquarters in Middleboro, and then sent out from there." He agreed that "it would have been at least several days" between when he placed an item in the mail box and when that item was mailed.

5

citation, and [Gray] notified the defendant as soon as he had completed his interview . . . that a citation would be issued." Id. at 286-287, quoting Commonwealth v. Moulton, 56 Mass. App. Ct. 682, 685 (2002).  We granted the defendant's motion for further appellate review.

Discussion.  Section 2 requires a police officer assigned to traffic enforcement duty to

> "record the occurrence of automobile law violations upon a citation, filling out the citation and each copy thereof as soon as possible and as completely as possible . . . . Said police officer shall inform the violator of the violation and shall give a copy of the citation to the violator. . . .  A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure.  In such case the violation shall be recorded upon a citation as soon as possible after such violation . . . ."[3]

In 1965, then Governor John A. Volpe proposed what has been referred to as the "no-fix" provision, in response to the concern that "[t]he nature of traffic citations renders them uniquely suited to manipulation and misuse." Commonwealth v. Pappas, 384 Mass. 428, 431 (1981), citing 1965 Senate Doc. No. 839, at 2.  See Newton Police Ass'n v. Police Chief of Newton,

---

[3] The relevant statutory language took its present form in 1985 through St. 1985, c. 794, § 3.  See Newton Police Ass'n v. Police Chief of Newton, 63 Mass. App. Ct. 697, 700 n.5 (2005).

63 Mass. App. Ct. 697, 699 (2005). Prior to the provision's insertion, a "police officer who witnessed a traffic offense would record the violation on a citation form and submit it to police headquarters. Within three days from the receipt of the citation, the police chief or a designated officer of at least sergeant grade would decide [how] to proceed" -- for instance, by issuing a written warning or court complaint, or by voiding the citation. Id.

By inserting § 2 in the statute to require the issuance of a citation "at the time and place of the violation," the Legislature sought to eliminate "opportunity for subsequent maneuvering or pressure" that the prior three-day approval window created. 1965 Senate Doc. No. 839, at 2. See Newton Police Ass'n, 63 Mass. App. Ct. at 700-701 (in enacting § 2, Legislature deliberately transferred discretion from police chief to police officer at scene to deal with perceived evil of traffic citation manipulation).

"Where the requirements of the statute are not followed, the complaint shall be dismissed regardless of whether the defendant was prejudiced by the failure." Commonwealth v. Carapellucci, 429 Mass. 579, 581 (1999), citing Commonwealth v. Mullins, 367 Mass. 733, 735 (1975). In this case, it is undisputed that the defendant did not receive "a copy of the citation . . . at the time and place of the violation." G. L.

c. 90C, § 2.  It is therefore the Commonwealth's burden to establish that one of the three statutory exceptions applies. See Mullins, supra at 734-735.

The Commonwealth argues that the third statutory exception applies in these circumstances.  This exception excuses the "failure to give a copy of the citation to the violator at the time and place of the violation . . . where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure."  G. L. c. 90C, § 2.[4]  The defendant maintains that the third exception does not apply to these facts, and argues further that, even if it does, the case still must be dismissed in light of additional statutory language requiring that a citation be issued "as soon as possible" after the violation.

We determine the applicability of the third exception with reference to the dual purposes of § 2.  The first purpose, which "is apparent from the common name of the statute, the 'no-fix'

_____

[4] The first exception, which excuses immediate issuance of a citation "where the violator could not have been stopped," is not applicable here.  Nor do these facts support an application of the second exception, "where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator."  G. L. c. 90C, § 2.  The Superior Court judge observed that "[t]he defendant was present at the scene of the accident and Gray completed his investigation into the nature of the violation and the identity of the violator by the time he left [the hospital]."

law," Pappas, 384 Mass. at 431, is to prevent "manipulation or misuse of the citation process because of any unnecessary or unreasonable delay." Commonwealth v. Cameron, 416 Mass. 314, 316 n.2 (1993), citing Pappas, supra. The second purpose is "to afford prompt and definite notice of the nature of the alleged violation to the putative violator." Pappas, supra. We also bear in mind the principle that, under the no-fix statute, "[e]ach case must be decided on its own peculiar facts." Commonwealth v. Provost, 12 Mass. App. Ct. 479, 484 (1981).

In the trial court and before us, the Commonwealth's arguments have focused primarily on whether the defendant was placed on notice of the impending criminal charges, such that the notice purpose of the no-fix statute was satisfied. To be sure, in some cases (including those on which the Commonwealth relies), the question of notice was dispositive of whether the third exception in § 2 applied, because the circumstances of those cases did not also implicate the antiabuse purpose of the no-fix provision. See, e.g., Cameron, 416 Mass. at 316 n.2 ("The other purpose of the 'no-fix' law is not involved in this case. There is no suggestion of manipulation or misuse of the citation process because of any unnecessary or unreasonable delay"); Moulton, 56 Mass. App. Ct. at 683, 685 (no-fix purpose of statute satisfied where "there was no manipulation of misuse of the citation," and officer promptly issued citation to

defendant on day of accident); Commonwealth v. Kenney, 55 Mass. App. Ct. 514, 518 (2002) ("The defendant makes no contention that the 'no-fix' ticket manipulation aspect of the statute is implicated. Rather, the defendant's principal claim rests upon the notice provision").

Here, however, the facts mandate that we also consider whether the antiabuse purpose of § 2 has been satisfied. We conclude that it has not. Gray did not give the defendant a citation at the scene of the accident or at the hospital. This is despite the fact that "[t]he defendant was present at the scene of the accident and Gray completed his investigation into the nature of the violation and the identity of the violator by the time he left [the hospital]." Rather, Gray returned to the police station, drafted an accident report, and submitted that report to his supervisor -- who took nine days to approve Gray's report. Only then did the citation issue. The Superior Court judge deemed this delay "[i]nexplicabl[e]."[5] What is more, Gray's testimony at the hearing indicates that the approval process and ensuing delay were attributable to the regular procedure of his department:

---

[5] The Appeals Court observed in its opinion that "there does not appear to have been any strong reason for the delay," adding that it "[did] not condone Trooper Gray's election to await review and 'approval' of his report by his supervisor before issuing a citation." Commonwealth v. O'Leary, 92 Mass. App. Ct. 282, 286 & n.8 (2017).

Q.: "Now, after you had left the hospital, what is the procedure you underwent to inform [the defendant] of the charges?"

A.: "Basically when it's a summons, we go back; we complete our investigation, write the report, print out the documentation, submit it to a supervisor. A supervisor then approves that report. Once it's approved, you print it and submit all your court paperwork. At that time, I wrote the citation and put it in the mail for [the defendant]."

The third exception of G. L. c. 90C, § 2, excuses delayed delivery of a citation where "a circumstance, not inconsistent with the purpose of this section . . . , justifies the failure." As mentioned, the no-fix provision was added to § 2 to eliminate not only actual manipulation or misuse of the citation process, but also the "'opportunity for subsequent maneuvering or pressure' afforded by the [prior] three-day [approval] period" (emphasis added). Newton Police Ass'n, 63 Mass. App. Ct. at 699, quoting 1965 Senate Doc. No. 839. Under the earlier practice that the Legislature sought to eliminate, an officer on traffic duty would record the citation and submit it to headquarters for later approval by the officer's supervisors. Newton Police Ass'n, supra.

The circumstances that caused the delay in this case are strikingly similar: rather than issue a citation "at the time and place of the violation," G. L. c. 90C, § 2, Gray drafted an accident report and submitted it to his supervisor, whose approval was necessary for the citation to issue. It was this

very practice of traffic officers requiring supervisory approval, and the delay in time that this created between the traffic violation and the ultimate issuance of the citation, that the Legislature deemed too great an "opportunity for subsequent maneuvering or pressure."  Newton Police Ass'n, 63 Mass. App. Ct. at 699, quoting 1965 Senate Doc. No. 839.  Here, the delay was for an "[i]nexplicabl[e]" nine days.  We cannot conclude, based on the history and antiabuse purpose of the no-fix provision, that these circumstances somehow remain "[]consistent with the purpose of [§ 2]."  G. L. c. 90C, § 2.  Even if it were undisputed that the defendant received sufficient notice of the impending charges against him, this same fundamental problem would remain.

The Commonwealth argues that the accident itself was so serious that it created an "ineradicable record of the event," Carapellucci, 429 Mass. at 581, such that any potential for a "fix" was eliminated.  Indeed, our cases recognize that "the very seriousness of particular charges tends to minimize the importance of absolute observance of the [citation] procedures because . . . 'fix' is virtually excluded, and notice is implicit."  Commonwealth v. Babb, 389 Mass. 275, 283 (1983).  In Pappas, 384 Mass. at 431-432, for example, where the defendant's vehicle "crossed the center line of a public street and struck a pedestrian," causing fatal injuries, we acknowledged that it was

"unlikely in such circumstances that police officers responding at the scene would regard this as a minor accident in which their discretion concerning whether to issue a citation would be absolute and unchecked."  See Babb, supra at 284, citing Pappas, supra (same).  On the other hand, in Carapellucci, 429 Mass. at 580, the defendant's vehicle collided head on with a lamp post, resulting in minor injuries to the defendant's passenger.  This court observed that that was "not a case in which the serious injuries resulting from the traffic violation . . . put the defendant on notice of the potential charges against him and created an ineradicable record of the event."  Id. at 581, citing Pappas, supra at 431.  See Carapellucci, supra at 582 (no-fix purpose furthered by "the causing of a serious injury, which creates such a record that manipulation is extremely unlikely").

This case hews more closely to Carapellucci, as it involves only a single-vehicle accident in which no third person was injured (let alone injured seriously or fatally).  To be certain, the accident in this case was significant:  the defendant's vehicle rolled over, the defendant and Murphy were transported to the hospital on stretchers, and Murphy testified that she broke several ribs.[6]  However, the Commonwealth -- whose

---

[6] As the Appeals Court noted, "[t]here are no medical records pertaining to the injuries suffered by the defendant or

burden it is to establish that a statutory exception in § 2 applies -- cites no authority holding that such a single-vehicle accident involving nonfatal injuries to a passenger but no third person creates an "ineradicable record of the event," such that the antiabuse purpose of § 2 is satisfied. Carapellucci, 429 Mass. at 581. Cf. Burnham, 90 Mass. App. Ct. at 490 ("we are unaware of any authority, and the Commonwealth cites to none, which has held that a single-[vehicle] accident, standing alone, provides a defendant with sufficient implied notice that satisfies the requirements of G. L. c. 90C, § 2").

Conclusion. While "failure to comply with [the citation requirement of § 2] is not fatal where the purposes of the statute have not been frustrated," Babb, 389 Mass. at 283, here, one of those purposes has been frustrated. The nine-day delay in the issuance of the citation, in the absence of any justification (legitimate or otherwise), contravenes the original, antiabuse purpose of the statute, such that the third exception in § 2 does not apply.[7] "[W]here an important feature

_____

Murphy in the record before us. However, Murphy testified that she suffered several broken ribs." O'Leary, 92 Mass. App. Ct. at 283 n.3.

[7] Given our holding that the antiabuse purpose of the no-fix provision was frustrated by the initial nine-day delay in the citation's issuance, we need not address the additional five to six weeks that it took for the defendant to actually receive the citation. Nor do we address the defendant's additional argument

of the statutory arrangements was flouted through sloth or sheer inattention of the police, the subsequent complaint [must be] dismissed."  Commonwealth v. Perry, 15 Mass. App. Ct. 281, 283 (1983), citing Mullins, 367 Mass. at 735-736.  The order dismissing the complaint against the defendant is affirmed.

So ordered.

---

that the citation was not issued "as soon as possible" after the violation, as required under § 2.