NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-666                                        Appeals Court

COMMONWEALTH  vs.  JANICE J. WERRA.

No. 18-P-666.

Plymouth.     December 11, 2018. - July 17, 2019.

Present:  Rubin, Milkey, & McDonough, JJ.


Motor Vehicle, Operating under the influence, Citation for
     violation of motor vehicle law.  Practice, Criminal,
     Citation for violation of motor vehicle laws, Dismissal.
     Notice.


     Complaint received and sworn to in the Hingham Division of
the District Court Department on January 25, 2017.

     A motion to dismiss was heard by Heather M.S. Bradley, J.,
and a motion to reconsider was heard by her.


     David Cutshall, Assistant District Attorney, for the
Commonwealth.
     Claudia Lagos for the defendant.


     RUBIN, J.  This case requires us to determine whether the

issuance of a citation for operating a motor vehicle under the

influence of intoxicating liquor (OUI-liquor), G. L. c. 90, § 24

(1) (a) (1), that was not issued contemporaneously with the

incident from which it arose, falls into the third exception of the so-called "no-fix" statute, G. L. c. 90C, § 2.

The following uncontested facts are taken from the judge's findings, supplemented by documentary evidence in the record. On July 22, 2015, the defendant was stopped by Trooper Michael Donahue of the State Police. The Commonwealth alleges on that date at around 12:20 P.M., Trooper Donahue received a dispatch to look out for a green Ford Explorer driving southbound on Route 3 in Hingham. A civilian had called to report that the Explorer was being driven erratically and that the driver seemed to be nodding off at the wheel.

About five minutes later the trooper saw the Explorer traveling in the breakdown lane. He pulled behind the vehicle and activated his cruiser's emergency lights, but the driver, subsequently identified as the defendant, did not stop. Instead the Explorer continued to an exit ramp. The trooper drove up alongside the Explorer. The defendant did not acknowledge the trooper. Trooper Donahue then drove in front of the Explorer and stopped his cruiser across the exit ramp. He got out of his cruiser and signaled for the defendant to pull over. She seemed disoriented and did not comply. Trooper Donahue walked up to the defendant's vehicle and opened the door, ordering the defendant to pull over. She seemed confused but eventually

pulled over after about two minutes and several requests by the trooper.

The trooper asked the defendant for her license and registration. She was slow to respond and looked through her makeup case slowly even though her wallet was on the front seat. When the trooper eventually asked her to identify herself, her speech was slurred. The trooper asked her to spell her name, to which she responded "Waaarrraa." She tried four additional times but was unable to spell her name. He asked her if she was on any medication, to which she responded, "Medication." He asked her age, to which she responded, "Fifty-eight." He asked for her date of birth five times, to which she responded repeatedly, "Fifty-eight."

Eventually the defendant clarified that she had taken methadone earlier that morning. Emergency medical services arrived and took the defendant to a hospital. An inventory search of the Explorer subsequently revealed a cup in the center console containing a clear liquid with a strong odor of an alcoholic beverage. That same day, Trooper Donahue wrote a citation for operating a motor vehicle under the influence of drugs (OUI-drugs), G. L. c. 90, § 24 (1) (a) (1), negligent operation of a motor vehicle, G. L. c. 90, § 24 (2) (a), and three civil infractions. The date of mailing or receipt of this

citation is not clear from the record but, for reasons that will become clear infra, is not relevant to the issue before us.

One week after the date of the incident, Trooper Donahue wrote a police report. In closing, the report stated, "It is recommended that [the defendant's] medical records be requested by the Plymouth County [district attorney]'s office prior to trial. Case closed." On August 5, 2015, a complaint issued charging the defendant with the offenses listed on the citation. On October 21, 2015, the defendant was arraigned in the District Court on the complaint. Only on March 16, 2016, over eight months after the incident, did the Commonwealth file a motion pursuant to Mass. R. Crim. P. 17, 378 Mass. 885 (1979), for a summons of the defendant's hospital records, which was allowed. The medical records were received in the court clerk's office on May 16, 2016, and indicated that on the afternoon of the alleged incident the defendant's blood alcohol content was .25 percent, over three times the legal limit. See G. L. c. 90, § 24 (1) (a) (1). The case was scheduled for trial on October 13, 2016.

Finally, on October 12, 2016, the very day before the scheduled trial date, five months after the medical records were received by the clerk's office, and almost sixteen months after the incident, the State Police applied for a complaint against the defendant for OUI-liquor, G. L. c. 90, § 24 (1) (a) (1). The application included the same police report completed by

Trooper Donahue on July 29, 2015, along with five pages from the defendant's medical records. The application also included a new citation for OUI-liquor dated October 12, 2016. This citation issued more than one year and three months after the traffic incident occurred.

The next day, October 13, 2016, the trial date scheduled for the OUI-drugs charge, the Commonwealth appeared in court. The docket indicates that the Commonwealth was "unable to proceed." There is no further explanation, nor have we been provided with a transcript of the court session on that date. On that same date the OUI-drugs charge was dismissed at the request of the Commonwealth.

A new complaint alleging OUI-liquor, was issued on January 25, 2017. On July 14, 2017, after the defendant had been arraigned on that complaint, the motion judge heard the defendant's motion to dismiss the complaint pursuant to the no-fix statute, G. L. c. 90C, § 2. That motion was allowed. The Commonwealth now appeals.

Discussion. The so-called no-fix statute, G. L. c. 90C, § 2, was adopted in 1965. See St. 1965, c. 692, § 3. The current version of § 2 provides:

> "A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the

nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure."

The purpose of this statute, as the Supreme Judicial Court has recently explained, was "to eliminate 'opportunity for subsequent maneuvering or pressure'" that the prior system, which included a three-day approval window, created. Commonwealth v. O'Leary, 480 Mass. 67, 70 (2018), quoting 1965 Senate Doc. No. 839, at 2.  "Prior to the provision's insertion, a 'police officer who witnessed a traffic offense would record the violation on a citation form and submit it to police headquarters.  Within three days from the receipt of the citation, the police chief or a designated officer of at least sergeant grade would decide [how] to proceed' -- for instance, by issuing a written warning or court complaint, or by voiding the citation."  Id., quoting Newton Police Ass'n v. Police Chief of Newton, 63 Mass. App. Ct. 697, 699 (2005).  Then-Governor John A. Volpe stated, in a special message to the Legislature proposing the no-fix traffic ticket bill, that this three-day period created the "opportunity for subsequent maneuvering or pressure."  1965 Senate Doc. No. 839, at 2.  Presumably, this ordinarily meant pressure for reasons other than legitimate law enforcement to void the citation, that is, to "fix" the ticket, or perhaps to provide a written warning rather than any other

disposition. The discretion placed in a higher ranking officer might also have been used arbitrarily to proceed more harshly than was warranted against a disfavored person who had been cited. Under § 2 the discretion thus was removed, and the decision to issue the citation was placed in the hands of the officer on traffic duty.

The OUI-liquor citation at issue in this case was not given to the "violator at the time and place of the violation." G. L. c. 90C, § 2. Consequently, the defendant was entitled to dismissal of the complaint unless the late issuance of the citation fell within one of the three exceptions to the rule that a failure to give a copy of the citation to the violator at the time and place of the violation provides a defense in any subsequent court proceeding on that violation.

The Commonwealth does not contend that this is a circumstance in which the violator could not have been stopped -- she was stopped, and indeed, given a citation, though for OUI-drugs rather than OUI-liquor. If there is uncertainty as to the cause of a driver's impairment, the second exception to the no-fix statute gives the Commonwealth whatever time is "reasonably necessary" to determine what precisely caused the impairment. But the Commonwealth does not here contend that the additional time was "reasonably necessary to determine the nature of the violation or the identity of the violator," G. L.

c. 90C, § 2, presumably because, although there was an open container of alcohol in the car, the police did not issue the citation for OUI-liquor until the day before trial on the OUI-drugs charge, some sixteen months after the incident, and some five months after the Commonwealth obtained the defendant's medical records, themselves only summonsed eight months after the incident that led to the initial citation.  The Commonwealth argues only that this falls within the third exception, for cases "where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure."  G. L. c. 90C, § 2.  It is to that exception that we now turn.

The third exception.  As originally enacted, the third exception applied in cases "where the court finds that some other circumstance, not inconsistent with the purpose of this section, namely, to cause violators of automobile law to be brought uniformly to justice, justifies the failure."  St. 1965, c. 692, § 3.  In 1982, G. L. c. 90C was struck and rewritten, and the exception was changed to cover cases "where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform and simplified method for disposing of violations of automobile law, justifies the failure."  St. 1982, c. 586, § 2.  Sections 2 through 4 of G. L.

c. 90C were once again struck and rewritten in 1985, which added that the purpose of the section was to create a "uniform, simplified and non-criminal method for disposing of automobile law violations" (emphasis added). St. 1985, c. 794, § 3. This is how the statute reads today. Consistent with the legislative purpose to stop manipulation and misuse of the citation process, in a criminal case like this, the relevant language, as initially enacted and as amended, focuses on uniformity.

In this case the circumstance alleged to have caused the failure to issue the citation has nothing to do with fixing tickets, and it appears to have nothing to do with manipulation of the use of traffic citations to charge the defendant, or to charge her more harshly, after an initial determination by the trooper was made not to do so. The trooper himself issued a criminal citation for operating under the influence, albeit with respect to a different substance, so the statutory punishment was precisely the same under both citations. The evidence at the scene supported the issuance of that citation. The trooper was unaware of the defendant's blood alcohol level at the time he issued the original citation, and the original charge was consistent with the defendant's own statement that she had taken methadone prior to driving the vehicle.

In any criminal case not involving an automobile, the defendant would be subject to being charged so long as the

statute of limitations had not run, and would have available to her all defenses other than that in the no-fix statute. In these circumstances, the terms articulated in the plain language of the third exception would appear to be met.

The case law, however, has added a gloss to the statute. Early on, our courts concluded that there were actually two subsidiary purposes within the "declared" purpose of the statute as it was originally written, that is, "to cause violators of automobile law to be brought uniformly to justice." St. 1965, c. 692, § 3. They are not only to prevent manipulation and misuse of traffic citations, but also "to afford prompt and definite notice of the nature of the alleged offense to the putative violator." Commonwealth v. Pappas, 384 Mass. 428, 431 (1981). "The statute . . . is designed to prevent a situation in which a person cannot establish a defence due to his being charged with a violation long after it occurs." Id., quoting Commonwealth v. Gorman, 356 Mass. 355, 357-358 (1969).

This gloss has been carried over without discussion under the twice-amended language of the third exception so that failure to provide a citation at the time and place of the incident has been held not fatal to a subsequent prosecution because of this exception only where the reason for delay is consistent with these two subsidiary purposes. See, e.g., Commonwealth v. Perry, 15 Mass. App. Ct. 281, 282 (1983). Thus,

where the purpose of G. L. c. 90C, § 2, to afford prompt and definite notice of the nature of the alleged offense to the putative violator has not been met, the failure to provide a citation at the time and place of the incident cannot be excused. Cf. Commonwealth v. Cameron, 416 Mass. 314, 317-318 (1993). Indeed, in a relatively recent decision applying the third exception, we concluded that even late-discovered evidence of OUI-liquor could not justify a new citation for someone cited at the scene with driving with a suspended license because "the defendant did not have prompt and definite notice of the offense for which he was charged." Commonwealth v. Burnham, 90 Mass. App. Ct. 483, 490 (2016).

The statute by its terms requires no showing of prejudice and, even though the purpose of providing notice might be viewed as a judicial gloss on the statutory language, our courts have concluded that the defendant need not show any actual prejudice from the delay. See Perry, 15 Mass. App. Ct. at 283. Indeed, the Supreme Judicial Court just last year reiterated that "[w]here the requirements of the statute are not followed, the complaint shall be dismissed regardless of whether the defendant was prejudiced by the failure." O'Leary, 480 Mass. at 70, quoting Commonwealth v. Carapellucci, 429 Mass. 579, 581 (1999).

We are therefore constrained to conclude that because of the absence of "prompt and definite notice of the nature of the

alleged offense" the order dismissing the complaint must be affirmed. The Commonwealth's argument to the contrary is that the defendant was charged with an impairment offense and had sufficient notice of that fact through the initial citation. But, as described above, the Supreme Judicial Court has explained that the requirement of prompt and definite notice "is designed to prevent a situation in which a person cannot establish a defence due to his being charged with a violation long after it occurs." Pappas, 384 Mass. at 431, quoting Gorman, 356 Mass. at 357-358. Although OUI-drugs and OUI-liquor require the Commonwealth to prove certain common elements, they also require the Commonwealth to prove different ones, and the evidence and defenses with respect to one charge are not always applicable to the other. See Commonwealth v. Gerhardt, 477 Mass. 775, 783-784, 786 (2017) (because "[t]he scientific community has not reached a consensus whether a defendant's performance on [field sobriety tests] is correlated with marijuana use or impairment," they may not be referred to in OUI-marijuana case as "tests," nor may officer opine that defendant "failed" one; unlike alcohol intoxication, because "there is no scientific consensus on what, if any, physical characteristics indicate marijuana intoxication, no lay opinion can be admissible as common knowledge or understanding on that subject"). Although the defendant asserts that the

"unreasonable delay in the issuance of the proper citation in this case certainly created a situation where [she] could not establish a defense to OUI-[l]iquor," she has not described any way in which she was prejudiced by the delay, but, as described above, under the law we are required to apply, that failure is immaterial. Consequently the order dismissing the OUI-liquor complaint must be affirmed.

<u>So ordered</u>.