SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. WILLIAM C. FOLEY

 
 Docket:
 SJC-13698
 
 
 Dates:
 February 5, 2025 - July 15, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Motor Vehicle, Citation for violation of motor vehicle law, License to operate. Practice, Criminal, Citation for violation of motor vehicle laws, Motion for a required finding. Registrar of Motor Vehicles, Revocation of license to operate. License. Statute, Construction. Words, "Reasonably necessary."
 
 

             Complaint received and sworn to in the Dedham Division of the District Court Department on February 2, 2022.
            A motion to dismiss was heard by Michael J. Pomarole, J.; a motion for reconsideration was also heard by him; and the case was heard by Paul J. McCallum, J.
            The Supreme Judicial Court granted an application for direct appellate review.
Erin R. Opperman for the defendant.
            Michael McGee, Assistant District Attorney, for the Commonwealth.
            DEWAR, J.  The defendant brings two challenges to his conviction under G. L. c. 90, § 23, third par., of operating a motor vehicle after a license revocation.
            First, the defendant contends that his motion to dismiss the complaint against him under the "no-fix" statute, G. L. c. 90C, § 2, should have been allowed.  That statute generally requires dismissal of a traffic violation if a police officer assigned to traffic enforcement duty does not issue a citation "at the time and place of the violation."  G. L. c. 90C, § 2, fifth par.  The statute contains an exception to dismissal, however, where "additional time was reasonably necessary" to investigate the violation.  Id.  Here, no citation was issued at the scene, because police did not learn of the violation until weeks later, through a television news report.  The motion judge correctly declined to dismiss the complaint because, in the circumstances of this case, additional time was indeed reasonably necessary.  See id.
            Second, the defendant challenges the sufficiency of the evidence that he operated a motor vehicle "after" a license revocation pursuant to one of the statutes listed in G. L. c. 90, § 23, third par., and "prior to the restoration of such license or right to operate."  The defendant concedes that his license was revoked for ten years pursuant to one of the listed statutes following a conviction of motor vehicle homicide, and that he had not regained his license.  He nevertheless argues that there was insufficient evidence that the instant offense took place "prior to the restoration of . . . [his] right to operate," G. L. c. 90, § 23, third par., because his ten-year revocation had expired by the time of the offense; he thus equates expiration of the ten-year revocation with "restoration" of his right to operate.  Giving effect to all the words in the statute, however, it does not apply merely during a qualifying revocation, but instead continues to apply until a defendant's license or right to operate is "restor[ed]."  Id.  Here, ample evidence showed that, notwithstanding the expiration of his ten-year revocation, the defendant's right to operate never was restored prior to this offense.  We therefore affirm.
            Background.  1.  Facts.  We first discuss the facts pertinent to the defendant's motion to dismiss.  "We adopt the [motion] judge's factual findings, which we do not disturb absent clear error, and supplement them with uncontroverted details from the record."  Commonwealth v. O'Leary, 480 Mass. 67, 67-68 (2018).
            On August 23, 2002, the defendant pleaded guilty to motor vehicle homicide by negligent operation under G. L. c. 90, § 24G (b), as appearing in St. 1982, c. 376, § 2, and to operating while under the influence of alcohol or drugs (OUI), second offense, under G. L. c. 90, § 24 (1) (a) (1).  He was sentenced to a prison term of from four years to four years and one day for the motor vehicle homicide, and to ten years of probation upon his release for the subsequent OUI offense.  At the time of these convictions, the motor vehicle homicide statute provided that the registry of motor vehicles (registry) "shall revoke the license or right to operate of a person" convicted under the statute for ten years for a first offense.  G. L. c. 90, § 24G (c), inserted by St. 1986, c. 620, § 16.[1]  The judge imposed the mandatory ten-year revocation, effective September 9, 2002.  Following the defendant's convictions, the registry additionally imposed a lifetime revocation of the defendant's license, effective September 2, 2002, under a statute applicable to persons who have a prior OUI conviction and who, in committing a subsequent such offense, cause an accident resulting in death.  See G. L. c. 90, § 24 (1) (c) (4), as appearing in St. 1982, c. 373, § 4 ("no new license shall be issued or right to operate be reinstated by the registrar" to such person).
            On November 12, 2021, an investigative journalist named Cheryl Fiandaca reported in a television news segment that the defendant had repeatedly driven a motor vehicle despite the permanent revocation of his license.  Video footage included as part of the news report depicted the defendant driving on several occasions, including on a street in Dedham.  The segment also featured footage of Fiandaca confronting the defendant, and the defendant responding by making reference to paperwork he had received from the registry.
            In mid-December, the Dedham police chief assigned Detective Michael Doyle to investigate the allegations made in the news report.  Doyle then watched the news report, in which he recognized one of the locations where the defendant was driving as a street in Dedham, and attempted to contact Fiandaca.  Doyle and Fiandaca thereafter "had phone tag back and forth," "not for any lack of trying" on either of their parts, for approximately two weeks.  The two eventually were able to speak by telephone on December 30, 2021.  Fiandaca confirmed the dates and locations of the events depicted in the footage, including that she had observed the defendant drive away from his residence in Dedham on October 29, 2021.
            By the time Doyle spoke with Fiandaca, he was aware, based on records from the registry and the Department of Criminal Justice Information Services, that the defendant's license was still revoked.  Because, however, the video footage included a statement from the defendant referring to paperwork that he had received from the registry, Doyle went to speak with the defendant at his residence on Friday, December 31, 2021, the day after Doyle's call with Fiandaca.  The defendant told Doyle that he had been attempting to regain his license but admitted that he had not yet succeeded.  On Monday, January 3, 2022, which was his next scheduled workday, Doyle wrote the defendant's citation and mailed it to him.
            2.  Procedural history.  A complaint issued against the defendant on February 2, 2022, charging him with operating a motor vehicle in violation of G. L. c. 90, § 23, third par., after his license had been revoked pursuant to the motor vehicle homicide statute, G. L. c. 90, § 24G.  He moved to dismiss the complaint under G. L. c. 90C, § 2, fifth par., based on the delay between the date of the offense on October 29, 2021, and the issuance of the citation on January 3, 2022.  See G. L. c. 90C, § 2, fifth par. ("A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation" unless exception applies, such as "where . . . additional time was reasonably necessary to determine the nature of the violation or the identity of the violator").  Following an evidentiary hearing, the judge denied the motion.
            The defendant subsequently moved for reconsideration after having obtained in discovery e-mail messages demonstrating that members of the Dedham police department, including Doyle, knew of allegations against the defendant well before Doyle began his investigation in mid-December.  The messages reflect that the Dedham police chief received an anonymous letter by mail on October 12, 2021, alleging that the defendant was driving in Dedham without a license, and the chief forwarded a copy of the letter the next day to fifty-three others in the department, including Doyle.  Shortly after the television news report aired on November 12, 2021, the chief received three further messages from people both within and outside the department -- including the district attorney for the Norfolk district -- asking him to look into the report.  The motion judge denied reconsideration.
            At the defendant's one-day bench trial before a different judge, the Commonwealth called Doyle to testify and submitted exhibits including video footage gathered during Fiandaca's investigation, the defendant's registry records, and court records of the defendant's 2002 convictions.  The defendant, who did not present any evidence, moved for a required finding of not guilty in part on the ground that the Commonwealth had failed to prove that his license was revoked pursuant to G. L. c. 90, § 24G, at the time of the offense, as required in his view under G. L. c. 90, § 23, third par.  The judge denied the motion, found the defendant guilty, and sentenced him to serve eighteen months in a house of correction.  The defendant appealed from his conviction, and this court granted his application for direct appellate review.
            Discussion.  1.  No-fix statute.  General Laws c. 90C, § 2, fourth par., requires "any police officer assigned to traffic enforcement duty" to record "automobile law violations" on a citation "as soon as possible," "whether or not the offense occurs within [the officer's] presence."  To effectuate this requirement, the statute provides a remedy of dismissal:  "[a] failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation."  G. L. c. 90C, § 2, fifth par.  See O'Leary, 480 Mass. at 71, quoting Commonwealth v. Carapellucci, 429 Mass. 579, 581 (1999) (statute requires dismissal "regardless of whether the defendant was prejudiced by the failure").
            The Legislature provided for three exceptions to the stringent penalty of dismissal:  (1) "where the violator could not have been stopped"; (2) "where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator"; or (3) where "a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure."  G. L. c. 90C, § 2, fifth par.  Even where one of these exceptions applies, the violation "shall be recorded upon a citation as soon as possible after such violation" and then mailed or delivered to the violator.  Id.
            We have long recognized that this statute serves "dual purposes."  O'Leary, 480 Mass. at 71.  First, "[t]he nature of traffic citations renders them uniquely suited to manipulation and misuse," and the statute "is intended to prevent such abuses by eliminating unreasonable or unnecessary delay."  Commonwealth v. Pappas, 384 Mass. 428, 431 (1981).  Second, the statute aims "to afford prompt and definite notice of the nature of the alleged offense to the putative violator . . . 'to prevent a situation in which a person cannot establish a defence due to his being charged with a violation long after it occurs.'"  Id., quoting Commonwealth v. Gorman, 356 Mass. 355, 357-358 (1969).  "The susceptibility of 'traffic tickets' to unequal and arbitrary disposition at the hands of traffic officers, and the requirement of prompt notice to the offender, reflect the normally fleeting and nonserious nature of most traffic infractions"; "a putative defendant [may] remain unaware of a transient traffic offense and . . . be unprepared to defend against it unless the incident is 'called immediately to [his] attention.'"  Pappas, supra, quoting Commonwealth v. Giannino, 371 Mass. 700, 703 (1977).
            These purposes have guided our interpretation of the statute's exception to dismissal where "additional time was reasonably necessary to determine the nature of the violation."  Pappas, 384 Mass. at 432-433, quoting G. L. c. 90C, § 2.  Because "[t]he statutory purposes would not be served by, in effect, requiring police officers to write citations first and to ask questions afterward," we have held that "[t]he statute must be read to permit police officers an opportunity to exercise reasoned and informed judgment in light of the particular circumstances in determining whether a violation has occurred."  Pappas, supra.  No "bright-line rule" governs whether additional time for investigation was reasonably necessary; rather, we "decid[e] each case on its unique facts."  Commonwealth v. Burnham, 90 Mass. App. Ct. 483, 486-487 (2016).  Thus, for example, in Commonwealth v. Ray, 95 Mass. App. Ct. 848, 849-853 (2019), a delay of approximately two months before issuance of a citation was reasonably necessary to complete the investigation of a two-vehicle accident resulting in serious injuries, but the Commonwealth failed to show that a further delay of more than eight months, unexplained in the record, was reasonably necessary before an additional charge was brought against the defendant.
            Because police did not issue a citation to the defendant until January 3, 2022, approximately two months after the violation, the Commonwealth bears the burden to establish that a statutory exception to dismissal applies.  See O'Leary, 480 Mass. at 70.  The Commonwealth argues that the motion judge correctly denied the motion to dismiss on the ground that "additional time was reasonably necessary" for investigation, where no officer was present at the scene of the violation and Doyle, once assigned to investigate the news report's allegations, appropriately sought to speak with both the reporter and the defendant before issuing a citation.  See G. L. c. 90C, § 2, fifth par.  The defendant responds that the citation was not issued as soon as possible, because probable cause to issue the citation existed at the time the Dedham police chief first received the news report video footage on November 12, 2021, or, alternatively, when Doyle himself first viewed the footage following his assignment to the investigation in mid-December, and further delay was not reasonably necessary.
            We begin by noting that the defendant makes no argument that the delay between the date of his offense on October 29, 2021, and the airing of the news report on November 12, 2021, requires dismissal.  It thus is undisputed that our assessment of the reasonableness of the delay begins on November 12, 2021.  The fifty-two-day delay in issuing a citation that followed falls into two distinct periods, and we discuss each in turn.
            An initial delay of approximately thirty days occurred between when the police chief was alerted to the existence of the news report on November 12, 2021, and when he assigned Doyle to investigate the matter in mid-December.  The record does not disclose why this delay occurred; the earlier anonymous letter making allegations against the defendant had prompted immediate action by the police chief, who forwarded it the next day to fifty-three members of the department.  And the defendant is correct that delay risks creating an opportunity for "maneuvering or pressure" (citation omitted).  O'Leary, 480 Mass. at 72-73.
            This period of delay after third-party allegations against the defendant is not the kind of delay with which the statute is concerned, however, and does not amount to "flout[ing] through sloth or sheer inattention" any "feature of the statutory" requirements.  O'Leary, 480 Mass. at 74, quoting Commonwealth v. Perry, 15 Mass. App. Ct. 281, 283 (1983).  The statute's core requirement that citations be issued promptly is directed at "any police officer assigned to traffic enforcement duty," who "shall, whether or not the offense occurs within his presence, record the occurrence of automobile law violations upon a citation . . . as soon as possible."  G. L. c. 90C, § 2, fourth par.  The statute does not impose an additional requirement on police departments regarding whether and when they assign officers to such "traffic enforcement duty," either as a matter of course or upon receipt of tips such as the anonymous letter and e-mail messages here.  Id.  Nothing in the statute's text suggests that the Legislature intended to require police departments to prioritize assigning officers to traffic enforcement duty over all other matters requiring their attention and limited resources, thereby depriving them of a reasonable period of time to assign an officer to investigate a third party's allegation.
            The initial thirty-day delay here thus stands in contrast to the circumstances in O'Leary, 480 Mass. at 72-73, where the delay was caused by a policy requiring officers to obtain a supervisor's approval before issuing a citation.  Such a policy was, we noted, the very "practice that the Legislature sought to eliminate" in the no-fix statute:  deferring issuance of a citation despite the fact that an officer present at the scene has "completed [the] investigation into the nature of the violation."  Id. at 71-72.[2]  Nor is this a situation where, after an officer completed an investigation and issued a prompt citation, information apparently "available all along" to the officer led to the belated issuance of an additional citation months later.  Burnham, 90 Mass. App. Ct. at 487.  Cf. Ray, 95 Mass. App. Ct. at 852; Burnham, supra.  Rather, here, "additional time was reasonably necessary" because no officer ever was called to the scene of the violation.  G. L. c. 90C, § 2, fifth par.  Doyle, once "assigned to traffic enforcement duty" within approximately thirty days to investigate the allegations of a violation by the defendant, then was obliged to issue a citation "as soon as possible."  G. L. c. 90C, § 2, fourth par.
            With respect to the subsequent period of approximately three weeks following Doyle's assignment to investigate the allegations against the defendant, the Commonwealth met its burden to show that the time Doyle took to perform his investigation was "reasonably necessary."  G. L. c. 90C, § 2, fifth par.  Regardless of the precise moment Doyle obtained probable cause to issue the citation, in the circumstances here, where no officer had responded to the scene of the violation, it was reasonable for Doyle to seek to speak with the reporter who supplied the video footage to confirm the details of the dates and locations depicted; to speak with the defendant, the day after speaking with the reporter, to clarify the nature of the registry papers the defendant mentioned in the video footage; and then to issue a citation on the next day Doyle was on duty.[3]  In essence, Doyle reasonably availed himself of "an opportunity to exercise reasoned and informed judgment in light of the particular circumstances," Pappas, 384 Mass. at 432-433, and his "cautious approach" to the investigation was "not inconsistent with the statute," Commonwealth v. Gammon, 22 Mass. App. Ct. 1, 8 (1986).
            The motion judge therefore correctly denied the defendant's motion to dismiss.
            2.  Sufficiency of the evidence.  The defendant further argues that there was insufficient evidence to support his conviction under G. L. c. 90, § 23, because, by the time of the instant offense, his license revocation for motor vehicle homicide under G. L. c. 90, § 24G, had ended.  "When reviewing claims of insufficient evidence, we assess the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt" (quotation and citation omitted).  Commonwealth v. Baez, 494 Mass. 396, 400 (2024).
            General Laws c. 90, § 23, sets mandatory minimum sentences for certain defendants convicted of operating a motor vehicle after their licenses have been suspended or revoked.  The provision at issue here prescribes the penalty for "[a]ny person convicted of operating a motor vehicle after his license to operate has been suspended or revoked . . . pursuant to" various statutes, including G. L. c. 90, § 24G, "and prior to the restoration of such license or right to operate or the issuance to him of a new license to operate" (emphases added).  G. L. c. 90, § 23, third par.[4]
            The evidence at trial was sufficient to prove that the defendant's operation of a motor vehicle occurred "after" a revocation imposed pursuant to one of the statutes listed in G. L. c. 90, § 23, third par. -- specifically, the motor vehicle homicide statute, G. L. c. 90, § 24G -- and "prior to the restoration of such license or right to operate or the issuance to him of a new license to operate," G. L. c. 90, § 23, third par.  Both the court record of the defendant's motor vehicle homicide conviction and his registry records show that his license was revoked on September 9, 2002, for ten years as a result of that conviction.  See G. L. c. 90, § 24G (c), inserted by St. 1986, c. 620, § 16 (mandating ten-year revocation).  The registry records further show that the defendant's license or right to operate had not been restored after this revocation.  Indeed, the records reflect that, in addition to the revocation pursuant to G. L. c. 90, § 24G, the defendant also had received an administrative "lifetime" revocation of his license to operate, effective September 2, 2002, and the lifetime revocation remained in effect as of the date of the instant offense.  See G. L. c. 90, § 24 (1) (c) (4), as appearing in St. 1982, c. 373, § 4 ("no new license shall be issued or right to operate be reinstated by the registrar . . . at any time" to person with prior OUI conviction who, in committing subsequent OUI offense, causes accident resulting in death).  Moreover, during Doyle's interview of the defendant on December 31, 2021, the defendant made a statement to the effect that the registry had not yet restored his license.  Thus, the evidence was sufficient to prove beyond a reasonable doubt that, at the time of the offense, the defendant was operating "after" a license revocation for the offense of motor vehicle homicide and "prior to" any restoration of his license or right to operate.  G. L. c. 90, § 23, third par.
            Disputing the import of this evidence, the defendant argues that the penalty set forth in G. L. c. 90, § 23, third par., applies only during the pendency of a revocation pursuant to one of the listed statutes, here the ten-year revocation following his conviction of motor vehicle homicide by negligent operation.  Equating expiration of that period of revocation with "restoration of such . . . right to operate," he contends that, because his ten-year revocation had concluded by the time of this offense, the penalty cannot apply.  G. L. c. 90, § 23, third par.
            The defendant's argument is at odds with the statute's plain language.  The statute prescribes a penalty that applies not only during a revocation pursuant to one of the listed statutes, but also, more expansively, "after" such a revocation and "prior to the restoration of such license or right to operate."  G. L. c. 90, § 23, third par.  In interpreting statutes, "we must strive to give effect to each word of a statute so that no part will be inoperative or superfluous."  Commonwealth v. Fleury, 489 Mass. 421, 427 (2022), quoting Ciani v. MacGrath, 481 Mass. 174, 179 (2019).  Giving effect to each word here, this penalty applies to the entire period after a qualifying revocation and "prior to" a "restoration" of the defendant's "license or right to operate."  G. L. c. 90, § 23, third par.  In other words, the penalty continues to apply even after expiration of the revocation, if a person's license or right to operate has not yet been restored.  Because the evidence showed that the defendant's offense occurred after his ten-year revocation for motor vehicle homicide and prior to any restoration of his license or right to operate, he was subject to the penalty.
            We likewise reject the defendant's argument, relying on Commonwealth v. Nascimento, 479 Mass. 681, 682-683 (2018), that our interpretation of G. L. c. 90, § 23, third par., impermissibly adds administrative lifetime revocations of the kind the defendant received to the list of statutory revocations after which the provision's penalty applies.  As described, the qualifying revocation here was not the defendant's administrative lifetime revocation pursuant to G. L. c. 90, § 24 (1) (c) (4), as appearing in St. 1982, c. 373, § 4, but instead was the ten-year revocation imposed upon his conviction of motor vehicle homicide under G. L. c. 90, § 24G, a statute listed in G. L. c. 90, § 23, third par.  Having operated a motor vehicle "after" this latter revocation and "prior to" any restoration of his license or right to operate, he is subject to the penalty under G. L. c. 90, § 23, third par.
            The evidence thus was sufficient to sustain the defendant's conviction under G. L. c. 90, § 23, third par.
            Conclusion.  The motion judge properly denied the defendant's motion to dismiss for failure to issue him a traffic citation at the time and place of his violation, because additional time was "reasonably necessary" to investigate the violation.  G. L. c. 90C, § 2, fifth par.  And the trial judge properly denied the defendant's motion for a required finding of not guilty, because the evidence was sufficient to prove that the defendant operated a motor vehicle "after" a license revocation pursuant to a statute listed in G. L. c. 90, § 23, third par., and "prior to" any restoration of his license or right to operate.  Accordingly, the judgment is affirmed.
So ordered.
 
footnotes

 
            [1] The Legislature has since increased this period of mandatory revocation to fifteen years.  See St. 2005, c. 122, § 16; St. 2018, c. 273, § 19; G. L. c. 90, § 24G (d).
            [2] O'Leary, 480 Mass. at 70, concerned the statute's third exception to dismissal, applicable where "a circumstance, not inconsistent with the purpose of this section . . . justifies the failure" to issue a citation "at the time and place of the violation," G. L. c. 90C, § 2, fifth par.  While the Commonwealth has not argued that the third exception applies here, we also consider the statute's purposes in applying the second exception.  See Pappas, 384 Mass. at 431-433.
            [3] The record does not disclose why Doyle did not issue the citation on the Friday afternoon immediately after meeting the defendant and instead did so the following Monday, the next day Doyle was on duty.  In the circumstances here, this delay over the weekend until Doyle's next duty day does not require dismissal.  See Commonwealth v. Cameron, 416 Mass. 314, 317-318 (1993) (where delay in issuing citation was otherwise justified, further delay while investigating officer was off duty for two days did not require dismissal).
            [4] The relevant portion of G. L. c. 90, § 23, third par., states in full:
"Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked pursuant to a violation of [§ 24 (1) (a)], or pursuant to [§ 24D], [24E], [24G], [24L], or [24N] of this chapter, or pursuant to [§ 8 (a)], or pursuant to a violation of [G. L. c. 90B, § 8A or 8B], or pursuant to a violation of [G. L. c. 90F, § 8, 9, or 11], or after notice of such suspension or revocation of his right to operate a motor vehicle without a license has been issued and received by such person or by his agent or employer, and prior to the restoration of such license or right to operate or the issuance to him of a new license to operate shall be punished by a fine of not less than one thousand nor more than ten thousand dollars and by imprisonment in a house of correction for not less than sixty days and not more than two and one-half years . . . ."